[No. B153506. Second Dist., Div. Three. June 30, 2003.]

CITY OF HAWTHORNE ex rel. HOWARD F. WOHLNER, Plaintiff and Appellant, v.
H&C DISPOSAL COMPANY, Defendant and Appellant.

**COUNSEL**

Corbin & Fitzgerald, Michael W. Fitzgerald and Bart Dalton for Plaintiff and Appellant.

McKenna Long & Aldridge, James J. Gallagher and Jean-Paul Menard for Defendant and Appellant.

**OPINION**

**KLEIN, P. J.**—Plaintiff and appellant City of Hawthorne (City) ex rel. Howard F. Wohlner (Wohlner) appeals an order dismissing his action against defendant and respondent H&C Disposal Company (H&C) following the grant of a motion for judgment on the pleadings with respect to the fourth amended complaint. H&C also appeals, seeking review of an order granting Wohlner's motion to strike costs.

■■ ■■ Wohlner filed this qui tam action against H&C under the California False Claims Act (sometimes referred to as the Act) (Gov. Code, § 12650 et seq.)[1] to recover damages and civil penalties on behalf of the City

---

[1] All further statutory references are to the Government Code, unless otherwise indicated.

for false claims submitted to the City.[2] The trial court granted judgment on the pleadings, finding Wohlner's claims were subject to the jurisdictional bars of section 12652, subdivisions (c)(10) and (d)(3)(A).

We reverse, finding neither jurisdictional bar is applicable.

Section 12652, subdivision (c)(10), the "first-to-file" rule, provides, "When a person brings an action under this subdivision, no other person may bring a related action based on the facts underlying the *pending* action." (Italics added.) Here, Wohlner's action is not precluded by any other *pending* litigation. The prior actions against H&C (the *Jamgotchian* actions) were dismissed before the instant action was instituted.

As for section 12652, subdivision (d)(3)(A), the public disclosure bar, it provides no court "shall have jurisdiction over an action under this article based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing. . . or by the news media" unless certain conditions are met. The public disclosure bar likewise is inapplicable. As explained below, the allegations in Wohlner's complaint were not based upon the public disclosure of allegations or transactions in the earlier *Jamgotchian* litigation.

Accordingly, the order of dismissal is reversed with directions to reinstate Wohlner's complaint.

### FACTUAL AND PROCEDURAL BACKGROUND

1. *The first Jamgotchian action.*[3]

On August 2, 1996, Jerry Jamgotchian (Jamgotchian), the owner of South Bay Food and Sports, filed a verified complaint against various defendants, including H&C, a company which contracted with the City to collect and transport trash generated within the City by businesses and residents. In the operative third amended complaint, Jamgotchian alleged that for the years 1990 through 1995, H&C fraudulently billed the City for increased dumping

---

[2] "*Qui tam*' is part of the longer Latin phrase '*qui tam pro domino rege quam pro se ipso in hac parte sequitur,*' which means 'who brings the action for the king as well as for himself.' See *United States ex rel. Stinson v. Prudential Ins.* [(3d Cir. 1991)] 944 F.2d 1149, 1152, n. 2 (quoting *Erickson v. American Inst. of Biological Sciences,* 716 F.Supp. 908, 909 n. 1 (E.D.Va.1989) and William Blackstone, *Commentaries on the Law of England* 160 (1768))." (*U.S. ex rel. LaCorte v. SmithKline Beecham* (3d Cir. 1998) 149 F.3d 227, 230, fn. 1.)

[3] The *Jamgotchian* pleadings were before the trial court herein by way of judicial notice and are part of the record on appeal.

fees of up to $8.65 per ton in addition to its usual charges. These dumping fees were purportedly a pass-through of increased costs charged by the American Waste Systems transfer station where H&C deposited the refuse. These bills allegedly were false in that H&C never incurred or paid any of these increased dumping fees. Further, under H&C's contract with the City, such dumping fee overcharges were not to be billed to the City and were covered by the cost-of-living increases H&C received under the contract. The City paid a portion of these claimed dumping fees and in turn raised local refuse rates paid by businesses and residents.

On August 18, 1997, the trial court granted H&C's motion to strike the third amended complaint and dismissed that action as to H&C on the ground Jamgotchian failed to amend the second amended complaint in accordance with the trial court's order sustaining a demurrer thereto.

### 2. *The second Jamgotchian action.*

On March 26, 1998, Jamgotchian filed a qui tam action on behalf of the City against H&C, alleging violations of the California False Claims Act. In the operative first amended complaint, Jamgotchian pled that "[d]uring the years 1990-1995, H&C knowingly submitted false statements and false invoices to the CITY for reimbursement in the total sum of $2,154,564.31 for escalation or 'loss' on disposal dump fees which were not authorized by the H&C REFUSE CONTRACT . . . ." These claims were false in that H&C's contract with the City provided for annual cost-of-living adjustments, but did not provide for any adjustment for escalation or loss on disposal dump fees. In addition to alleging that H&C submitted false claims for charges which were not authorized by its contract with the City, Jamgotchian pled that H&C falsely concealed from the City the discounts it received from American Waste Systems on disposal dump fees in the sum of $874,788 for the years 1990 through 1995.

The City declined to intervene in the action. In September 1998, H&C and Jamgotchian reached a settlement, resulting in a payment to the City of $139,500, and the case was dismissed.

### 3. *The instant action against H&C for violation of the False Claims Act.*

On June 12, 1999, Wohlner and Jamgotchian filed their original complaint in this action to recover damages and civil penalties on behalf of the City. As in the previous case, the City filed a notice of intent not to proceed with the qui tam action.

### a. *The operative fourth amended complaint.*

On February 13, 2001, Wohlner filed the operative fourth amended complaint, which deleted Jamgotchian as a qui tam plaintiff. The complaint

alleged in relevant part: Wohlner was treasurer of the City for 16 years, from 1973 to 1989, and thereafter served as a financial consultant to H&C for seven years, from 1990 to 1997. After setting forth various terms of the 1971 contract between the City and H&C and a 1974 amendment thereto, Wohlner pled the City had paid false claims made by H&C in the sum of at least $1,924,160 in connection with a $10.25 per ton dump site increase in 1980.

Specifically, Wohlner alleged the following misconduct by H&C: In December 1980, the City approved H&C's request for a $10.25 per ton dump site increase which was demanded by H&C due to an extraordinary cost increase to H&C because of the closure of the Palos Verdes landfill. The $10.25 per ton increase failed to deduct consumer price index (CPI) increases that H&C had received for the years 1979 and 1980. With the correct CPI reduction, the $10.25 per ton rate should have been $9.27 per ton, to the damage of the City for the past 10 years in the sum of at least $529,200. Further, because the $10.25 per ton dump site increase was demanded by H&C as an extraordinary increase due to the closure of the Palos Verdes landfill, said extraordinary dump site increase should have been a one-time rate increase that should not have been the basis for annual CPI increases from 1981 through 2001. Therefore, the City had been damaged for the past 10 years by CPI increases on said $10.25 per ton increase in the sum of at least $1,394,960.

### b. *H&C's failed motion for summary judgment.*

Following the filing of the fourth amended complaint, H&C moved for summary judgment, contending there had been no false claim. On May 16, 2001, the trial court denied H&C's motion, finding "a material, triable issue of fact whether or not [H&C] submitted a false claim by requesting the $10.25/ton dump fee surcharge in 1980."

### c. *In pretrial motions, H&C repeatedly took the position that the prior lawsuits were unrelated to this case.*

Because H&C takes the position that judgment on the pleadings was proper because the *Jamgotchian* cases were "related" to this action, we include some pertinent procedural history in which H&C took a contrary position.

On March 20, 2001, with the trial date rapidly approaching, H&C filed a motion in limine to exclude evidence of the prior lawsuits against it. H&C's papers asserted: "Prior to the filing of the present action, approximately six lawsuits were filed by former plaintiff Jerry Jamgotchian against or involving H&C . . . . *None of these lawsuits relate in any manner to any of the*

*issues raised in this case. . . .* By this Motion, H&C seeks to exclude any mention by plaintiff at trial of prior lawsuits filed against or involving [H&C] . . . . This evidence should be excluded because it is irrelevant and therefore inadmissible." (Italics added.)

Similarly, on March 28, 2001, at a hearing on a motion for a protective order, H&C's counsel argued: "The claims at issue in this case, your honor, are not what occurred in the early '90s . . . . The claim at issue here arises out of facts that occurred in 1978 and 1980 . . . ."

 d. *The motion for judgment on the pleadings.*

On April 24, 2001, H&C filed its motion for judgment on the pleadings, asserting the trial court had no jurisdiction of the subject of the causes of action alleged in the fourth amended complaint, in that the complaint was barred by the first-to-file and public disclosure jurisdictional bars of the California False Claims Act.

H&C asserted the first-to-file rule (§ 12652, subd. (c)(10)) was applicable because the second *Jamgotchian* action, the 1998 action, was broad enough to include the claims asserted in Wohlner's fourth amended complaint. Further, the material elements of the false claims alleged in the fourth amended complaint were publicly disclosed in both the first and second *Jamgotchian* actions, and therefore Wohlner's action was barred by the public disclosure jurisdictional bar. (§ 12652, subd. (d)(3)(A).)

In opposition, Wohlner argued the first-to-file rule was inapplicable. As indicated, the first-to-file rule provides: "When a person brings an action under this subdivision, no other person may bring a related action based on the facts underlying the *pending* action." (§ 12652, subdivision (c)(10), italics added.) Wohlner emphasized that the 1996 and 1998 *Jamgotchian* actions were terminated before this action was commenced, and therefore the *Jamgotchian* actions were not "pending" actions for purposes of the first-to-file rule.

As for the public disclosure bar, Wohlner asserted the fourth amended complaint was not based on the 1996 and 1998 *Jamgotchian* actions. As set forth above, his fourth amended complaint herein was based on false claims arising from a failure in 1980 to credit the $10.25 per ton surcharge with prior annual CPI adjustments, as well as H&C's using the $10.25 per ton increase in 1980 as the basis for annual CPI increases in subsequent years. In contrast, the 1996 and 1998 *Jamgotchian* actions were based on H&C's 1990-1995 conduct.

e. *Trial court's ruling.*

On June 1, 2001, the matter came on for hearing. Thereafter, the trial court entered an order granting H&C's motion for judgment on the pleadings without leave to amend. The trial court ruled the claims alleged in Wohlner's fourth amended complaint were barred "and that the Court lacks subject matter jurisdiction of this action pursuant to Section 12652(c)(10) [the first-to-file bar] and Section 12652(d)(3)(A) [the public disclosure bar]."

The trial court entered an order of dismissal.

f. *Subsequent proceedings.*

H&C filed a memorandum of costs, seeking to recover $8,822. Wohlner filed a motion to strike costs, on the ground the denial of H&C's motion for summary judgment established that the case had merit. The trial court granted Wohlner's motion, ruling that H&C could not recover costs because the action was dismissed for lack of subject matter jurisdiction.

Wohlner filed a timely notice of appeal from the order of dismissal.[4] H&C filed a timely appeal from the order granting Wohlner's motion to strike costs.

## CONTENTIONS

Wohlner contends the trial court erred as a matter of law in granting judgment on the pleadings because neither the first-to-file jurisdictional bar nor the public disclosure jurisdictional bar is applicable, and in any event, the trial court abused its discretion in granting judgment on the pleadings without leave to amend.

H&C contends both jurisdictional bars are applicable and that the trial court abused its discretion in denying H&C its costs.

## DISCUSSION

1. *California's False Claims Act.*

a. *General principles.*

California's False Claims Act was enacted in 1987 and is patterned largely on similar federal legislation (31 U.S.C. § 3729 et seq.). (*American Contract*

---

[4]An order of dismissal signed by a trial court and filed in the action constitutes a judgment and is effective for all purposes. (Code Civ. Proc., § 581d.)

*Services v. Allied Mold & Die, Inc.* (2001) 94 Cal.App.4th 854, 858 [114 Cal.Rptr.2d 773].) ▮ The Act is designed to supplement governmental efforts to identify and prosecute fraudulent claims made against state and local governmental entities by authorizing private parties (referred to as qui tams or relators) to bring suit on behalf of the government. (*American Contract Services*, at p. 858.) The ultimate purpose of the Act is to protect the public fisc. (*Ibid.*) To that end, the Act must be construed broadly so as to give the widest possible coverage and effect to its prohibitions and remedies. (*LeVine v. Weis* (2001) 90 Cal.App.4th 201, 210 [108 Cal.Rptr.2d 562].)

Under the Act, treble damages may be imposed on one who, among other things, "[k]nowingly presents or causes to be presented to an officer or employee of the state or of any political subdivision thereof, a false claim for payment or approval." (§ 12651, subd. (a)(1).) A "claim" within the meaning of the Act includes "any request or demand for money, property, or services made to any employee, officer, or agent of the state or any political subdivision . . . ." (§ 12650, subd. (b)(1).)

b. *Jurisdictional requirements of section 12652.*

Section 12652 of the Act contains various procedural and jurisdictional requirements. This appeal concerns the statute's first-to-file jurisdictional bar (§ 12652, subd. (c)(10)) as well as the public disclosure jurisdictional bar (§ 12652, subd. (d)(3)(A)).

The first-to-file jurisdictional bar provides: "When a person brings an action under this subdivision, no other person may bring a related action based on the facts underlying the pending action." (§ 12652, subd. (c)(10).) The first-to-file rule prevents successive plaintiffs from bringing related actions based on the same underlying facts. (*United States ex rel. Lujan v. Hughes Aircraft Co.* (9th Cir. 2001) 243 F.3d 1181, 1186-1187 (hereafter *Lujan*) [construing first-to-file bar of 31 U.S.C. § 3730(b)(5) as jurisdictional].)

The public disclosure jurisdictional bar states: "No court shall have jurisdiction over an action under this article based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in an investigation, report, hearing, or audit conducted by or at the request of the Senate, Assembly, auditor, or governing body of a political subdivision, or by the news media, unless the action is brought by the Attorney General or the prosecuting authority of a political subdivision, or the person bringing the action is an original source of the information." (§ 12652, subd.

(d)(3)(A).) The public disclosure jurisdictional bar is "intended to bar parasitic or opportunistic actions by persons simply taking advantage of public information without contributing to or assisting in the exposure of the fraud." (*People ex rel. Allstate Ins. Co. v. Weitzman* (2003) 107 Cal.App.4th 534, 564 [132 Cal.Rptr.2d 165] (hereafter *Allstate*) [discussing similar provision in Ins. Code, § 1871.7, subd. (h)(2)(A)].)

### 2. *Standard of appellate review.*

 A motion for judgment on the pleadings performs the function of a general demurrer and is to be treated in the same fashion on appeal. (*Board of Regents v. Davis* (1975) 14 Cal.3d 33, 37, fn. 4 [120 Cal.Rptr. 407, 533 P.2d 1047]; *Boccato v. City of Hermosa Beach* (1994) 29 Cal.App.4th 1797, 1803-1804 [35 Cal.Rptr.2d 282].) Therefore, a motion for judgment on the pleadings is treated as admitting all material facts properly pleaded in the complaint. (See *Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].) In addition, other relevant matters which are properly the subject of judicial notice, such as the *Jamgotchian* complaints, may be treated as having been pled. (Evid. Code, §§ 452, subd. (d), 459; *Marina Tenants Assn. v. Deauville Marina Development Co.* (1986) 181 Cal.App.3d 122, 128 [226 Cal.Rptr. 321].)

 Also pertinent here is *United States ex rel. Capella v. United Technologies* (D.Conn., June 3, 1999, No. 3:94-CV-2063 (EBB) 1999 WL 464536 (hereafter *Capella*), which involved a qui tam action under the federal False Claims Act (31 U.S.C. § 3729 et seq.).[5] **(6)** *Capella* stated "[i]n a facial challenge to the legal sufficiency of the jurisdictional allegations, the Court must accept as true all well-pleaded facts in the complaint and refrain from drawing inferences in favor of the party contesting jurisdiction. [Citations.]" (*Capella*, 1999 WL 464536.)

 Guided by these principles, we evaluate Wohlner's complaint.[6]

---

[5]Although *Capella*, a United States District Court decision, is not published in the Federal Supplement, it is citable notwithstanding California Rules of Court rule 977, which only bars citation of unpublished *California* opinions. Therefore, *Capella* is citable as persuasive, although not precedential, authority. (See Cal. Style Manual (4th ed. 2000) § 1:34, pp. 35-36.)

[6]Although the sufficiency of the pleadings is ultimately a question of law for this court's independent review (*Coopers & Lybrand v. Superior Court* (1989) 212 Cal.App.3d 524, 529 [260 Cal.Rptr. 713]), we observe there is some tension between H&C's earlier position that

3. *Wohlner's action is not barred by the first-to-file rule; the Jamgotchian actions were no longer pending at the time he commenced the instant suit.*

Section 12652, subdivision (c)(10), the Act's "first-to-file" rule, provides, "When a person brings an action under this subdivision, no other person may bring a related action based on the facts underlying the *pending* action." (Italics added.)

■ Here, Wohlner's action was not precluded by any other *pending* litigation. The two pertinent prior actions against H&C, namely, the *Jamgotchian* actions, were dismissed before the instant action was instituted. As indicated, the first *Jamgotchian* action against H&C was dismissed on August 18, 1997. The second *Jamgotchian* action was settled and dismissed on September 15, 1998. Wohlner commenced the instant action on July 12, 1999. At that time, neither *Jamgotchian* action was "pending" and therefore the first-to-file bar is plainly inapplicable.[7]

Citing *Lujan, supra,* 243 F.3d 1181, H&C argues the dismissal of the 1998 *Jamgotchian* action does not preclude the application of the first-to-file bar. However, *Lujan* is totally distinguishable and H&C's reliance thereon is misplaced.

*Lujan* held a preexisting but *subsequently dismissed* action was a pending action for purposes of the federal False Claim Act's first-to-file rule. (31 U.S.C. § 3730(b)(5); *Lujan, supra,* 243 F.3d at p. 1188.) The federal rule, which is similar to the California version, provides: "When a person brings [a qui tam action], no person other than the Government may intervene or *bring a related action based on the facts underlying the pending action.*" (31 U.S.C. § 3730(b)(5), italics added; cf. § 12652, subd. (c)(10).)

In *Lujan,* the prior action, the *Schumer* action, was brought in 1989. Plaintiff Lujan brought her action in 1992. The *Lujan* court held: "Even assuming that Schumer's whole action was dismissed in 1997, five years after Lujan filed her complaint, Schumer's action should still be considered a 'pending' action for purposes of § 3730 (b)(5) *because Schumer's action was pending when Lujan brought her claim.* To hold that a later dismissed action was not a then-pending action would be contrary to the plain language

the *Jamgotchian* litigation was unrelated to this action, and its current position that previous *Jamgotchian* allegations are substantially similar to those being asserted in this case.

[7]The fact Jamgotchian was initially Wohlner's coplaintiff herein does not alter our conclusion that the *first-to-file bar* is inapplicable. The first-to-file rule is inapplicable because at the time this action was commenced, the prior *Jamgotchian* actions had been dismissed and were no longer pending. H&C concedes the removal of Jamgotchian as a named plaintiff in this action does not affect the applicability of the first-to-file bar.

*of the statute and the legislative intent." (Lujan, supra,* 243 F.3d at p. 1188, italics added.)

Thus, at the time plaintiff Lujan commenced her action, the *Schumer* action was still pending. Although the *Schumer* action subsequently was dismissed, at the time Lujan filed suit, the *Schumer* action was extant and therefore the *Schumer* action was a pending action for purposes of the first-to-file rule.

Here, in contrast, at the time the instant action was commenced, the *Jamgotchian* actions already had been dismissed. *Lujan* does not support H&C's argument that the second *Jamgotchian* action should be construed as a pending action for purposes of the first-to-file rule.[8]

Because the *Jamgotchian* actions were not pending at the time the instant action was commenced, we do not reach the issue of whether this action was "related" to a pending action for purposes of the first-to-file bar. (§ 12652, subd. (c)(10).)

4. *The public disclosure bar is inapplicable; the instant action is not based upon the public disclosure of allegations in the Jamgotchian pleadings.*

As indicated, the public disclosure jurisdictional bar of the California False Claims Act provides: "No court shall have jurisdiction over an action under this article *based upon the public disclosure of allegations* or transactions in a criminal, civil, or administrative hearing, in an investigation, report, hearing, or audit conducted by or at the request of the Senate, Assembly, auditor, or governing body of a political subdivision, or by the news media, unless the action is brought by the Attorney General or the prosecuting authority of a political subdivision, or the person bringing the action is an original source of the information." (§ 12652, subd. (d)(3)(A), italics added.)[9]

As recently noted in *Allstate,* there is no California decisional authority interpreting the public disclosure bar of the California False

---

[8]We reject H&C's argument that it would be absurd to give a literal interpretation to the term "pending" as it is used in section 12652, subdivision (c)(10). We presume the Legislature meant what it said, and that it intended in the first-to-file bar to preclude successive persons from bringing related actions "based on the facts underlying the *pending* action." (*Ibid.,* italics added.)

[9]A qui tam case will not be dismissed under the public disclosure bar if the person bringing the action is an original source of the allegations. (§ 12652, subd. (d)(3)(A)(B).) Wohlner does not contend he is an original source of the allegations in the fourth amended complaint.

Claims Act. (*Allstate, supra,* 107 Cal.App.4th at p. 566.) However, the language of the public disclosure bar is not unique to the California False Claims Act. Similar provisions are found in Insurance Code section 1871.7, subdivision (h)(2)(A), relating to insurance fraud prevention, and in the federal False Claims Act (31 U.S.C. § 3729 et seq.), at 31 United States Code section 3730(e)(4)(A), and have been the subject of extensive judicial interpretation.

 a. *The construction of substantially similar language in Insurance Code section 1871.7 and in the federal False Claims Act.*

*Allstate* was called upon to construe substantially similar language in Insurance Code section 1871.7, which authorizes the filing of a qui tam action for insurance fraud. Subdivision (h)(2)(A) thereof, which likewise is a public disclosure bar, provides: "No court shall have jurisdiction over an action under this section *based upon the public disclosure of allegations or transactions* in a criminal, civil, or administrative hearing in a legislative or administrative report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information." (Ins. Code, § 1871.7, subd. (h)(2)(A), italics added.)

In *Allstate*, plaintiff Allstate Insurance Company brought a suit on behalf of the People of the State of California, alleging that the defendants participated in an automobile insurance fraud conspiracy, it innocently paid out proceeds to the defendants, and it could maintain a qui tam action pursuant to Insurance Code section 1871.7. The trial court ruled it lacked subject matter jurisdiction because the allegations of the complaint were based upon previously publicly disclosed allegations or transactions and Allstate was not an original source of the information. (*Allstate, supra,* 107 Cal.App.4th at pp. 538-539.)

As an aid to construction, the reviewing court looked to federal authority concerning the public disclosure and original source rules as they relate to the jurisdictional bar in federal False Claims Act litigation (*Allstate, supra,* 107 Cal.App.4th at p. 555), but found, after a broad survey, that "[f]ederal decisional authority is in hopeless conflict. (DeVecchio, *Qui Tam Actions: Some Practical Considerations* (2001) SG013 ALI-ABA 399, 405 [' "There seems to be no unanimity both among and within individual circuits as to when claims are 'based upon' public disclosures, what constitutes a public disclosure, when and under what circumstances a qui tam relator must first inform the government of the claims, the extent of the factual information

that must be provided to the government . . . [,] when a qui tam action must be filed where there has been a public disclosure, what are the requisites to be classified as an 'original source,' when a claim is 'primarily based upon' prior public disclosures and many other issues that arise under the statute" ' . . . ].)." (*Allstate, supra,* 107 Cal.App.4th at p. 559.)

Notwithstanding the conflicts in federal authority on discrete aspects of the public disclosure bar, *Allstate* was guided by "federal precedent with respect to the general purpose of the [public disclosure] jurisdictional bar— that is, to prevent qui tam actions brought by persons who, like the relator in *U.S. ex rel. Marcus v. Hess* [(1943)] 317 U.S. [537, 545-548] [63 S.Ct. 379, 384-386, 87 L.Ed. 443], simply copied allegations from a criminal indict-ment on file, learned of the specific fraudulent conduct at issue through public channels, and who had not contributed or assisted in a material way in exposing the fraud." (*Allstate, supra,* 107 Cal.App.4th at p. 564.) *Allstate* concluded: "The California Legislature, in adopting [Insurance Code section 1871.7,] subdivision (h)(2), intended to bar parasitic or opportunistic actions by persons simply taking advantage of public information without contrib-uting to or assisting in the exposure of the fraud." (*Ibid.*)

*Allstate* further found the meaning of the pertinent language of the statute ("No court shall have jurisdiction over an action under this section *based upon the public disclosure of allegations or transactions . . .*") was clear. (Ins. Code, § 1871.7, subd. (h)(2)(A), italics added; *Allstate, supra,* 107 Cal.App.4th at p. 564.) " '*Based upon*' means supported by (Webster's Collegiate Dict. (10th ed. 1995) p. 94, col. 2), or resting on (Webster's New World Dict. (3d college ed. 1991) p. 114, col. 2). '*Public,*' as in '*public disclosure*' means '[o]pen or available for all to use . . . .' (Black's Law Dict. [(7th ed. 1999)] p. 1242, col. 1.) An '*allegation*' is '[s]omething declared or asserted as a matter of fact . . .' (Black's Law Dict., *supra,* p. 74, col. 2) or 'a statement by a party to a legal action of what the party undertakes to prove' (Webster's Collegiate Dict., *supra,* p. 30, col. 1.) A '*transaction*' is 'something transacted,' 'an exchange or transfer of goods, services, or funds,' 'an act, process, or instance of transacting,' or 'a communicative action or activity involving two parties or things that recip-rocally affect or influence each other.' (*Id.* at p. 1252, col. 2.)" (*Allstate, supra,* 107 Cal.App.4th at pp. 564-565, italics added.)

Guided by these definitions, the *Allstate* court reversed, finding the plain-tiff's action "rests on and is supported by the facts and actions publicly disclosed in connection with the [prior] proceeding only insofar as they may have alerted any person to the existence of an alleged fraud ring involving

certain defendants, particularly the publicly named attorneys. The circumstantial evidence indicates the public disclosure of the alleged fraud ring may have prompted Allstate to investigate whether fraud was perpetrated on it. But [plaintiff's investigator's] uncontradicted declaration demonstrates it was only through Allstate's own considerable efforts that the facts specific to frauds perpetrated on it came to light. . . . . Allstate alone uncovered evidence of 99 allegedly staged collisions and 326 separate allegedly fraudulent insurance claims, *none* of which [is] involved in the [prior] suit. . . . To hold that Allstate's action is barred would[] be contrary to the legislative goal of encouraging insurers to participate in the battle against automobile insurance fraud by bringing section 1871.7 actions; undermine the legislative intent that insurers assist in the prevention, identification, investigation, and prosecution of automobile insurance fraud; and diminish realization of the legislative goal of coordinated efforts by law enforcement agencies and insurers to deal with the serious and prevalent insurance fraud problem. [¶] Furthermore, Allstate is not a parasite or an opportunist. Allstate did not simply take information publicly disclosed in connection with [the prior] lawsuit and, without contributing anything to the exposure of fraud, bring its own section 1871.7 action." (*Allstate, supra,* 107 Cal.App.4th at pp. 565-566.)

b. *The public disclosure bar does not bar the instant suit; Wohlner's allegations herein are not based upon the publicly disclosed allegations in the Jamgotchian actions.*

In determining whether the instant action is barred by the public disclosure bar, we are guided by certain controlling principles. The California False Claims Act is designed to supplement governmental efforts to identify and prosecute fraudulent claims made against state and local governmental entities by authorizing private parties to bring suit on behalf of the government, with the ultimate purpose of protecting the public fisc. (*American Contract Services v. Allied Mold & Die, Inc., supra,* 94 Cal.App.4th at p. 858.) To that end, the Act is to be "construed broadly *so as to give the widest possible coverage and effect* to its prohibitions and remedies." (*LeVine v. Weis, supra,* 90 Cal.App.4th at p. 210, italics added.) The public disclosure jurisdictional bar, in turn, is designed to bar parasitic or opportunistic qui tam actions by persons simply taking advantage of public information without contributing to or assisting in the exposure of the fraud. (*Allstate, supra,* 107 Cal.App.4th at p. 564.) ■ Therefore, the public disclosure bar should be applied only as necessary to preclude parasitic or opportunistic actions, but not so broadly as to undermine the Legislature's intent that relators assist in the prevention, identification, investigation, and prosecution of false claims.

██ We now turn to the essential issue of whether Wohlner's allegations in this case are "based upon" the publicly disclosed allegations in the *Jamgotchian* actions. (§ 12652, subd. (d)(3)(A).)

As indicated, in this action Wohlner alleges that in 1980, H&C improperly obtained a $10.25 per ton dumpsite increase. According to Wohlner, the $10.25 per ton increase failed to deduct CPI increases that H&C already had received for the years 1979 and 1980, and with the correct CPI reduction, the increase should have been $9.27 per ton. Further, because the $10.25 per ton dump site increase was demanded by H&C as an extraordinary increase due to the closure of the Palos Verdes landfill, this should have been a one-time rate increase and should not have been the basis for annual CPI increases in subsequent years.

In other words, the gravamen of the instant action is that H&C improperly manipulated CPI increases with respect to the 1980 dump site increase, by seeking a $10.25 per ton increase instead of a $9.27 per ton increase in the first instance in 1980, and, thereafter, by obtaining CPI increases on what should have been a one-time extraordinary increase.

These allegations are *not* based upon the claims made in the *Jamgotchian* pleadings.

In the first *Jamgotchian* action, it was alleged that for the years 1990 through 1995, H&C fraudulently billed the City for increased dumping fees of up to $8.65 per ton in addition to its usual charges. These dumping fees were purportedly a pass-through of increased costs charged by the American Waste Systems transfer station where H&C deposited the refuse. These bills allegedly were false in that H&C never incurred or paid any of these increased dumping fees. Further, under H&C's contract with the City, these overcharges were not to be billed to the City and were covered by the CPI increases H&C received under the contract.

The second *Jamgotchian* action pled that "[d]uring the years 1990-1995, H&C knowingly submitted false statements and false invoices to the CITY for reimbursement in the total sum of $2,154,564.31 for escalation or 'loss' on disposal dump fees which were not authorized by the H&C REFUSE CONTRACT . . . ." These claims were false in that H&C's contract with the City provided for annual CPI adjustments, but not for any adjustments for escalation or loss on disposal dump fees. Additionally, it was pled therein that H&C falsely concealed from the City the discounts it received from American Waste Systems on disposal dump fees in the sum of $874,788 for the years 1990 through 1995.

Thus, neither of the *Jamgotchian* actions presented an issue as to the alleged manipulation by H&C of CPI increases in connection with the $10.25 per ton extraordinary increase that H&C obtained in 1980. Accordingly, the alleged wrongdoing raised by Wohlner in the instant action is not based upon the public disclosure of allegations in the *Jamgotchian* litigation. Therefore, this action does not constitute a "parasitic" lawsuit derived from the *Jamgotchian* pleadings, rendering the public disclosure jurisdictional bar inapplicable.

We reject H&C's argument that the *Jamgotchian* litigation sufficiently alerted the government to the possibility that it might be engaging in the type of fraudulent practices at issue here. In effect, H&C contends the *Jamgotchian* pleadings put the government on notice of every possible fraud in connection with H&C's contract with the City. H&C's approach would result in a windfall for the defendant in a qui tam action, and would impose upon the plaintiff in the initial lawsuit the heavy burden of alleging every imaginable theory at the risk of immunizing the defendant from any further liability. Such an interpretation of the public disclosure bar is broader than necessary to prevent parasitic or opportunistic suits and we reject it.

This case is analogous to *U.S. ex rel. Found. Aiding the Elderly v. Horizon* (9th Cir. 2001) 265 F.3d 1011. There, two prior lawsuits had revealed instances of fraud, but not the particular fraudulent conduct appearing in the subsequently filed qui tam action. In one of the prior lawsuits, the plaintiffs alleged that "defendants generally misrepresented to them the level of care provided by the particular nursing facility." (*Id.* at p. 1015.) In the other earlier lawsuit, the plaintiffs alleged that the defendants fraudulently concealed from residents, employees, governmental officials and others, the improper, deficient care of residents and hazardous health conditions at the facility, i.e., asbestos contamination. (*Id.* at pp. 1015-1016.) In contrast, the third lawsuit alleged that the defendants "misrepresented the level of care to the government and received payment for that alleged substandard care." (*Id.* at p. 1015.) Because the prior complaints did not disclose the type of fraud currently in issue, the Ninth Circuit Court of Appeals concluded the qui tam action was not barred by the federal False Claim Act's public disclosure jurisdictional bar. (*Id.* at p. 1016.)

Similarly, in the instant case, the prior *Jamgotchian* lawsuits had revealed instances of fraud, but not the particular fraudulent conduct appearing in Wohlner's subsequently filed qui tam action.

In sum, we conclude Wohlner's allegations herein are not based upon the publicly disclosed *Jamgotchian* allegations. Consequently, the public disclosure jurisdictional bar is inapplicable.[10]

### 5. *No need to reach Wohlner's remaining contention.*

As explained, the trial court erred in its determination Wohlner's fourth amended complaint is precluded by the first-to-file and public disclosure jurisdictional bars. Because the trial court should have denied H&C's motion for judgment on the pleadings and Wohlner is entitled to reinstatement of his complaint, it is unnecessary to address Wohlner's alternative contention the trial court abused its discretion in granting judgment on the pleadings without leave to amend.

### 6. *No merit to H&C's contention regarding costs.*

H&C contends that as a prevailing defendant, it was entitled to its costs as a matter of right (Code Civ. Proc., § 1032), and it seeks reversal of the order granting Wohlner's motion to tax costs with directions to enter an order awarding it $8,822 in costs.

Our reversal of the order of dismissal and the reinstatement of Wohlner's complaint disposes of this issue. At this juncture, there is no prevailing party and the matter of costs is premature.

### DISPOSITION

The order of dismissal is reversed with directions to reinstate Wohlner's complaint. Wohlner shall recover costs on appeal.

Kitching, J., and Aldrich, J., concurred.

A petition for a rehearing was denied July 29, 2003, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied October 15, 2003. Baxter, J., did not participate therein.

---

[10]The fact Jamgotchian was initially Wohlner's coplaintiff herein does not alter our conclusion that the *public disclosure jurisdictional bar* is inapplicable. As explained, this action is *not* based on the public disclosure of allegations in the *Jamgotchian* litigation. Also, H&C concedes the removal of Jamgotchian as a named plaintiff in this action does not affect the applicability of the public disclosure jurisdictional bar.