Filed 7/20/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| MELANIE WINNS ET AL., <br><br>    Plaintiffs and Respondents, <br>v. <br><br>POSTMATES INC., <br><br>    Defendant and Appellant. | A155717 <br><br> (San Francisco County <br> Super. Ct. No. CGC-17-562282) |

Postmates Inc. (Postmates) appeals from the trial court's order denying its petition to compel arbitration of a Private Attorney General Act (PAGA) claim for civil penalties brought by Plaintiffs Melanie Ann Winns, Ralph John Hickey Jr., and Kristie Logan (collectively Plaintiffs). In denying Plaintiffs' petition with respect to their PAGA claim, the trial court followed our Supreme Court's decision in *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348 (*Iskanian*), which held that representative action waivers were unenforceable. We reject Postmates' arguments that *Iskanian* was abrogated by subsequent United States Supreme Court decisions and affirm the order denying the motion to compel arbitration of the PAGA claim.

**FACTUAL AND PROCEDURAL BACKGROUND**

Postmates is a technology company that connects customers needing delivery services with "couriers"—third-party delivery providers—through its website or smartphone app. Postmates' website and app enable customers to

arrange for the delivery of items from local businesses by placing orders electronically.

Beginning on March 1, 2017, prospective couriers seeking to offer their delivery services were presented with Postmates' Fleet Agreement when logging onto the app for the first time. Before offering delivery services, a courier had to agree to the Fleet Agreement, which was intended to govern the relationship between Postmates and couriers.

The Fleet Agreement directs a prospective courier as follows: "Please review the mutual arbitration provision set forth below in Section 11 carefully, as it will require you to resolve disputes with Postmates on an individual basis, except as otherwise provided in Section 11, through final and binding arbitration unless you choose to opt out of the mutual arbitration provision. By digitally signing this agreement, you will be acknowledging that you have read and understood all of the terms of this agreement (including the Mutual Arbitration Provision in Section 11) and have taken time to consider the consequences of this important business decision." (Bold and block capitals omitted.)

The Mutual Arbitration Provision in Section 11 of the Agreement provides that Postmates and couriers "mutually agree to resolve any disputes between them exclusively through final and binding arbitration instead of filing a lawsuit in court." This applies to "any and all claims between the [p]arties," including but not limited to claims related to a courier's classification as an independent contractor, the delivery fees received by a courier for deliveries, and state and local wage and hour laws. Under its terms, the Provision is "governed exclusively by the Federal Arbitration Act (9 U.S.C. §§ 1–16) ('FAA')."

2

In addition, the Mutual Arbitration Provision includes a "Representative Action Waiver." (Bold omitted.) This waiver provision states that the parties "mutually agree that any and all disputes or claims between the [p]arties will be resolved in individual arbitration. The [p]arties further agree that by entering into this Agreement, they waive their right to have any dispute or claim brought, heard or arbitrated as a representative action, or to participate in any representative action, and an arbitrator shall not have any authority to arbitrate a representative action."

The Fleet Agreement gives couriers the right to opt out of arbitration. The opt out provision states: "Arbitration is not a mandatory condition of [the courier's] contractual relationship with Postmates, and therefore Contractor may submit a statement notifying Postmates that Contractor wishes to opt out of this Mutual Arbitration Provision." (Bold omitted.) A courier wishing to opt out does so by submitting an "Opt Out Form" to Postmates within 30 days of agreeing to the Fleet Agreement.

Plaintiffs all worked as Postmates couriers and completed deliveries through the app after March 1, 2017. In doing so, all three plaintiffs necessarily acknowledged the Fleet Agreement. Postmates did not receive opt out forms for any of them.

In December 2017, Plaintiffs filed their operative first amended complaint against Postmates as a putative class and representative action.[1] Plaintiffs alleged individual and class claims under the Labor Code and Unfair Competition Law. They alleged in part that Postmates illegally

_____

[1] Steven Alvarado was also among the named plaintiffs who filed the complaint. Since Postmates has "expressly stated that Plaintiff Steven Alvarado's claims are not at issue in this appeal because he properly opted out of the arbitration agreement," we do not refer to him in our background discussion or in our analysis, *infra.*

withheld wages and took gratuities given to couriers. They alleged that they and all other couriers in California who had delivered through the Postmates app had been misclassified as independent contractors instead of employees. They also alleged representative claims under PAGA for which they sought civil penalties and statutory damages for underpaid wages under Labor Code section 558.

In January 2018, Postmates moved to compel arbitration of Plaintiffs' claims for damages and underpaid wages claim pursuant to the Fleet Agreement and to strike the class allegations. They also sought to stay Plaintiffs' claim for civil penalties under PAGA pending the outcome of arbitration, as Postmates deemed the PAGA claim derivative of Plaintiffs' other claims.

After Plaintiffs filed their motion, the United States Supreme Court decided *Epic Systems Corp. v. Lewis* (2018) 138 S.Ct. 1612 (*Epic Systems*). In supplemental briefing directed at Plaintiffs' PAGA civil penalty claim, Postmates argued that *Epic Systems* implicitly overruled the California Supreme Court's opinion in *Iskanian*, *supra*, 59 Cal.4th 348, to the extent *Iskanian* held that PAGA waivers in arbitration agreements were unenforceable. On that basis, Postmates requested that Plaintiffs also be compelled to arbitrate their PAGA claim for civil penalties.

Following a hearing, the trial court issued an order granting in part and denying in part Postmates' motion. After finding that a valid arbitration agreement existed between the parties, the court granted the motion to compel arbitration with respect to Plaintiffs' individual claims, including their claim under Labor Code section 558. It stayed the class claims pending an arbitrator's determination of whether the FAA or California law governed the Fleet Agreement.

As to Plaintiffs' PAGA civil penalty claim relevant here, the court held that it could not compel that claim to arbitration and stayed the claim pending the outcome of the arbitration of Plaintiffs' individual claims. The court concluded that *Epic Systems* did not compel Plaintiffs to arbitrate that claim as *Epic Systems* "addressed only the question of whether class or collective action waivers were enforceable under the FAA," and "did not address the enforceability of waivers of representative actions, such as those brought under PAGA," and thus "representative action waivers remain unenforceable under *Iskanian*." The court also held arbitration of Plaintiffs' PAGA civil penalty claim was barred under a clause in the parties' arbitration agreement stating that " 'an arbitrator shall not have any authority to arbitrate a representative action.' "

This appeal followed.

## DISCUSSION

On appeal, Postmates seeks reversal only of the trial court's order denying Postmates' motion to compel Plaintiffs Winns, Hickey, and Logan to arbitrate their PAGA claim.[2] Postmates submits it was error for the trial court to refuse to enforce the arbitration agreement according to its terms because *Iskanian* does not apply and was effectively overruled by *Epic Systems*. Based on our de novo review (*Julian v. Glenair, Inc.* (2017) 17 Cal.App.5th 853, 864), we reject these contentions and conclude the trial court properly denied Postmates' petition to compel arbitration of Plaintiffs' PAGA claim.

---

[2] Plaintiffs' appellate brief discusses several issues outside the scope of Postmates' appeal, including issues involving Steven Alvarado. Since Steven Alvarado's claims are not at issue in this appeal, as noted previously, we disregard these and other non-responsive arguments.

PAGA "authorizes an employee to bring an action for civil penalties on behalf of the state against his or her employer for Labor Code violations committed against the employee and fellow employees, with most of the proceeds of that litigation going to the state." (*Iskanian*, *supra*, 59 Cal.4th at p. 360.) The Legislature enacted PAGA "to remedy systemic underenforcement of many worker protections" (*Williams v. Superior Court* (2017) 3 Cal.5th 531, 545) and to enhance the state's enforcement of labor laws by " 'allow[ing] aggrieved employees, acting as private attorneys general, to recover civil penalties for Labor Code violations, with the understanding that labor law enforcement agencies [are] to retain primacy over private enforcement efforts' " (*Iskanian*, at p. 379). Although PAGA empowers employees to act as the agent of the Labor Commissioner, the governmental entity "is always the real party in interest." (*Id.* at p. 382.) A PAGA action is therefore "a type of qui tam action" " ' "designed to protect the public and not to benefit private parties." ' " (*Id.* at pp. 382, 387.)

In *Iskanian*, the California Supreme Court examined two related questions regarding the pre-dispute waiver of PAGA claims: (1) whether arbitration agreements requiring employees to waive their right to bring PAGA actions are unenforceable under state law and, if so, (2) whether the FAA preempts that rule. (*Iskanian*, *supra*, 59 Cal.4th at p. 378.) First, the court held that pre-dispute waivers requiring employees to relinquish the right to assert a PAGA claim on behalf of other employees were prohibited, as such waivers violate public policy and "harm the state's interests in enforcing the Labor Code and in receiving the proceeds of civil penalties used to deter violations." (*Id.* at p. 383.) Second, the court held the FAA did not preempt this rule invalidating PAGA waivers in arbitration agreements because "the FAA aims to ensure an efficient forum for the resolution of *private* disputes,

6

whereas a PAGA action is a dispute between an employer and the state [Labor and Workforce Development] Agency." (*Id.* at p. 384.) PAGA actions "directly enforce *the state's* interest in penalizing and deterring employers who violate California's labor laws." (*Id.* at p. 387.) The FAA, which "aims to promote arbitration of claims belonging to the private parties to an arbitration agreement," "does not aim to promote arbitration of claims belonging to a government agency." (*Id.* at p. 388.) This "is no less true when such a claim is brought by a statutorily designated proxy for the agency as when the claim is brought by the agency itself. The fundamental character of the claim as a public enforcement action is the same in both instances." (*Ibid.*)

As a threshold matter, Postmates argues *Iskanian* does not apply because Plaintiffs had an opportunity to opt out of the arbitration agreement and representative action waiver but did not. Observing the *Iskanian* court's conclusion "that an arbitration agreement requiring an employee as a *condition of employment* to give up the right to bring representative PAGA actions in any forum is contrary to public policy" (*Iskanian, supra,* 59 Cal.4th at p. 360, italics added), Postmates contends the trial court improperly relied on *Iskanian* since agreeing to arbitration or the waiver was not a mandatory condition of a courier's employment. We disagree. *Iskanian*'s holding that a PAGA waiver was unenforceable was premised on the public policy rationale that a PAGA waiver improperly circumvents the Legislature's intent to empower employees to enforce the Labor Code as agency representatives and harms the state's interest in enforcing the Labor Code. (*Id.* at pp. 386–387.) *Iskanian* did not turn on how the worker entered into the arbitration agreement, or the mandatory or voluntary nature of the worker's consent to

7

the agreement. Accordingly, Plaintiffs' ability to opt out of the Fleet Agreement, or their election not to do so, does not impact our analysis.

Postmates' principal argument that *Iskanian'*s PAGA waiver rule cannot survive *Epic Systems* and its progeny is also unavailing. "On federal questions, intermediate appellate courts in California must follow the decisions of the California Supreme Court, unless the United States Supreme Court has decided the *same* question differently." (*Correia v. NB Baker Electric, Inc.* (2019) 32 Cal.App.5th 602, 619 (*Correia*); see also *Truly Nolen of America v. Superior Court* (2012) 208 Cal.App.4th 487, 507.)[3] Neither *Epic Systems* nor its progeny addressed the same PAGA waiver issue decided by *Iskanian*, and thus *Iskanian* continues to control the outcome of this appeal.

Decided four years after *Iskanian*, *Epic Systems* involved employees opposed to arbitration on the ground that the arbitration agreement prohibiting class actions was illegal and unenforceable under a provision of

---

[3]     Postmates does not analyze the standard we use to determine when an intervening U.S. Supreme Court decision overrules a California Supreme Court decision. This "same question" standard we apply here is cited and acknowledged in its briefing without dispute.

Multiple times, Postmates states that we are " 'compelled to follow the rule enunciated by the United States Supreme Court,' even if the California Supreme Court previously came to a different conclusion." For this principle, Postmates cites *People v. Ledesma* (1988) 204 Cal.App.3d 682, 690 (*Ledesma*) without further discussion of the case. In *Ledesma*, the defendant appealed his second-degree murder conviction in part on the grounds that statements he made to detectives at the police station while his attorney attempted to gain access to him were improperly admitted into evidence. (*Id.* at p. 686.) The *Ledesma* court determined it was not bound by an exclusionary rule set forth by our Supreme Court but was instead compelled to follow one enunciated by the U.S. Supreme Court because our Supreme Court's rule had been superseded by constitutional amendment. (*See id.* at pp. 691–692.) The *Iskanian* rule concerning PAGA waivers has not been similarly superseded, so *Ledesma* provides no basis for us to disregard our Supreme Court's controlling authority.

the National Labor Relations Act that guarantees workers the right to engage in "concerted activities." (*Epic Systems*, *supra*, 138 S.Ct. at p. 1622.) The U.S. Supreme Court rejected any NLRA exception to the FAA and reiterated that the FAA instructs federal courts to enforce arbitration agreements according to their terms. (*Id*. at pp. 1610, 1624.) As the U.S. Supreme Court explained, the question in *Epic Systems* was whether employees and employers should "be allowed to agree that any disputes between them will be resolved through one-on-one arbitration? Or should employees always be permitted to bring their claims in *class or collective actions*, no matter what they agreed with their employers?" (*Id*. at p. 1619, italics added.) In addressing these questions, the U.S. Supreme Court did not decide or consider whether a worker may waive a right to bring a *representative* action on behalf of a state government. Thus, the Court's reasoning in *Epic Systems* did not address the basis for our Supreme Court's decision in *Iskanian*, namely, that a PAGA action is not an individual dispute between private parties but an action brought on behalf of the state by an aggrieved worker designated by statute to be a proper representative of the state to bring such an action. Accordingly, *Epic Systems* did not consider the same issue concerning PAGA waivers decided in *Iskanian,* much less reach a contrary conclusion on that issue.

It is therefore not surprising that California courts have uniformly rejected the argument that *Epic Systems* overruled *Iskanian*. In *Correia*, the court rejected the employer's argument that *Iskanian* was no longer binding in light of *Epic Systems*. (*Correia, supra*, 32 Cal.App.5th at p. 609.) Noting that *Epic Systems* "reaffirmed the broad preemptive scope of the [FAA]," the court explained the case still "did not address the specific issues before the *Iskanian* court involving a claim for civil penalties brought *on behalf of the*

9

*government* and the enforceability of an agreement barring a PAGA representative action in any forum." (*Ibid*.) *Correia* further added that the claim at issue in *Epic Systems* differed "fundamentally from a PAGA claim" because the employee in *Epic Systems* was "asserting claims *on behalf of other employees*," whereas a plaintiff who brings a PAGA action has "been deputized by the state" to act " 'as "the proxy or agent" of the state' " to enforce the state's labor laws. (*Id*. at pp. 619–620.) Because *Epic Systems* did not "decide the *same* question differently," the *Correia* court concluded its "interpretation of the FAA's preemptive scope [did] not defeat *Iskanian*'s holding or reasoning for purposes of an intermediate appellate court applying the law." (*Ibid*.) The *Correia* court further decided that "[w]ithout the state's consent, a pre[-]dispute agreement between an employee and an employer cannot be the basis for compelling arbitration of a representative PAGA claim because the state is the owner of the claim and the real party in interest, and the state was not a party to the arbitration agreement." (*Id*. at pp. 621–622.)

In *Collie v. Icee Company* (2020) 52 Cal.App.5th 477 (*Collie*), review den. Nov. 10, 2020, S264524, the employer's argument that *Iskanian* was no longer good law after *Epic Systems* was again rejected. (*Id*. at p. 482.) The *Collie* court noted *Epic Systems* did not address " 'the unique nature of a PAGA claim' " and therefore did not undermine *Iskanian*'s "characterization of PAGA claims as law enforcement actions in which plaintiffs step into the shoes of the state." (*Id*. at p. 483.) The court also held the pre-dispute PAGA waiver remained unenforceable without a showing that the state—which is the real party in interest in PAGA actions—consented to the waiver. (*Ibid*.)

We join the courts in *Correia*, *Collie*, and several other cases that have reached the same conclusion that *Epic Systems* did not overrule *Iskanian*. (See, e.g., *Provost v. YourMechanic, Inc.* (2020) 55 Cal.App.5th 982, 998

(*Provost*), rev. denied Jan. 20, 2021, S265736 [reaffirming decision in *Correia* that *Epic Systems* did not overrule *Iskanian*]; *Olson v. Lyft, Inc.* (2020) 56 Cal.App.5th 862, 872; *Contreras v. Superior Court of Los Angeles County* (2021) 61 Cal.App.5th 461, 471–472 [joining *Correia* and *Olson* in concluding that *Epic Systems* did not undermine *Iskanian*'s validity].)

The other intervening U.S. Supreme Court decisions relied on by Postmates likewise do not overrule *Iskanian*.

In *Harry Schein, Inc. v. Archer and White Sales, Inc.* (2019) 139 S.Ct. 524 (*Harry Schein*), the U.S. Supreme Court addressed the "wholly groundless" exception applied by some federal courts to avoid sending a claim to arbitration when the "argument for arbitration is wholly groundless." (*Id.* at p. 528.) The Supreme Court held the "wholly groundless" exception was inconsistent with the FAA and reiterated that when a contract delegates arbitrability to an arbitrator, the court may not override that contractual agreement. (*Ibid.*) The Supreme Court clarified that a party seeking to compel arbitration need show only that "the parties' [valid arbitration] contract delegates the arbitrability question to an arbitrator." (*Id.* at p. 529.) Once it has done so, "a court may not override the contract . . . [and] possesses no power to decide the arbitrability issue. That is true even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." (*Ibid.*)

In *Lamps Plus, Inc. v. Varela* (2019) 139 S.Ct. 1407 (*Lamps Plus*), a hacker impersonated a company official and tricked an employee into disclosing personal information of about 1,300 other employees. (*Id.* at p. 1412.) Varela, a Lamps Plus employee, had signed an arbitration agreement when he started work at the company, but sued Lamps Plus in federal district court to bring state and federal claims on behalf of a putative class of

11

employees whose tax information had been compromised as a result of the breach. (*Id.* at p. 1413.) The district court granted Lamps Plus's motion to compel individual arbitration but, rather than ordering individual arbitration, it granted arbitration on a classwide basis. (*Ibid.*) The Ninth Circuit found the arbitration agreement ambiguous as to whether the parties had agreed to a class arbitration waiver but construed the agreement against Lamps Plus (the drafter of the agreement) and approved the classwide arbitration. (*Id.* at pp. 1413–1415.) The U.S. Supreme Court reversed the Ninth Circuit. (*Id.* at p. 1419.) The Court observed that the FAA requires courts to enforce arbitration agreements according to their terms and preempts state law "to the extent it 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives' of the FAA." (*Id.* at p. 1415.) Noting the foundational FAA principle that " '[a]rbitration is strictly a matter of consent,' " the Court held that the FAA preempts California's *contra proferentum* rule—requiring ambiguities in a contract to be construed against the drafter—when the rule is used "to impose class arbitration in the absence of the parties' consent." (*Id.* at pp. 1415, 1418.) It specifically concluded that "[c]ourts may not infer from an ambiguous agreement that parties have consented to arbitrate on a classwide basis. The doctrine of *contra proferentem* cannot substitute for the requisite affirmative 'contractual basis for concluding that the part[ies] *agreed* to [class arbitration].' " (*Id.* at p. 1419.)

Postmates' contention that *Harry Schein* and *Lamps Plus* overruled *Iskanian* is equally unavailing. In *Harry Schein*, the "question presented [was] whether the 'wholly groundless' exception is consistent with the [FAA]." (*Harry Schein, supra*, 139 S.Ct. at p. 528.) In *Lamps Plus*, the Court considered "whether the FAA . . . bars an order requiring class arbitration

12

when an agreement is not silent, but rather 'ambiguous' about the availability of such arbitration." (*Lamps Plus*, *supra*, 139 S.Ct. at p. 1412.) Neither case decided nor considered whether a worker may waive a right to bring a representative action on behalf of a state government. Neither case mentions PAGA or similar laws in other states. Nor did the reasoning in either case address the basis for our Supreme Court's decision in *Iskanian*, namely, that a PAGA action is not an individual dispute between private parties but an action brought on behalf of the state by an aggrieved worker designated by statute to be a proper representative of the state to bring such an action. Accordingly, like *Epic Systems*, neither *Harry Schein* nor *Lamps Plus* considered the same question concerning PAGA waivers decided in *Iskanian*, much less reached a contrary conclusion on that issue.

Postmates also argues we should disregard *Iskanian* because the rule it established as to the unenforceability of PAGA waivers falls outside the FAA's savings clause. The FAA savings clause prescribes that an arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." (9 U.S.C. § 2.) In *Epic Systems*, the Supreme Court observed that the FAA savings clause permitted arbitration agreements to be invalidated by " ' "generally applicable contract defenses, such as fraud, duress, or unconscionability" ' " but "offers no refuge for 'defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue.' " (*Epic Systems*, *supra*, 138 S.Ct. at p. 1622.) Since the *Iskanian* rule does not fall within the savings clause, Postmates contends it is " 'displaced by the FAA.' "

Postmates' argument misses the point of *Iskanian*, which expressly established that the FAA does not preempt state law on the unenforceability

13

of PAGA waivers.  In *Iskanian*, our Supreme Court explained that "the rule against PAGA waivers does not frustrate the FAA's objectives because . . . the FAA aims to ensure an efficient forum for the resolution of private disputes, whereas a PAGA action is a dispute between an employer and the state Labor and Workforce Development Agency."  (*Iskanian*, *supra*, 59 Cal.4th at p. 384.)  Therefore, *Iskanian* held "a PAGA claim lies outside the FAA's coverage" since it was "not a dispute between an employer and an employee arising out of their contractual relationship."  (*Id.* at p. 386.)  Accordingly, the FAA savings clause does not apply to or constrain the PAGA waiver rule established in *Iskanian*.

Finally, Postmates contends that the various Court of Appeal decisions upholding *Iskanian* following *Epic Systems*, including *Correia*, *Collie*, and *Olson*, were wrongly decided and distinguishable.  In so doing, the company cites several federal district and circuit court cases which have determined *Epic Systems* and its progeny "require strict enforcement of individual arbitration agreements, no matter the circumstance."  While federal court opinions may have persuasive value, they do not bind California courts. (*Godfrey v. Oakland Port Services Corp.* (2014) 230 Cal.App.4th 1267, 1277, fn. 10; *City of Hawthorne ex rel. Wohlner v. H&C Disposal Co.* (2003) 109 Cal.App.4th 1668, 1678, fn. 5.)  Nor do the opinions of our sister Courts of Appeal control.[4]  (See *Lucent Technologies, Inc. v. Board of Equalization*

---

[4]     The U.S. Supreme Court may soon consider the relationship between the FAA and the *Iskanian* PAGA rule.  In May 2021, a petition for certiorari was filed in *Viking River Cruises, Inc. v. Moriana* (No. 20-1573), asking the high court to decide "[w]hether the [FAA] requires enforcement of a bilateral arbitration agreement providing that an employee cannot raise representative claims, including under PAGA."  In June 2021, a petition for certiorari was also filed in *Your Mechanic, Inc. v. Provost* (No. 20-1787) presenting the same question.

(2015) 241 Cal.App.4th 19, 35.) Under the doctrine of stare decisis, we are bound to follow our Supreme Court's decision in *Iskanian* that PAGA waivers are invalid under state law. (See *Auto Equity Sales, Inc. v. Superior Court of Santa Clara County* (1962) 57 Cal.2d 450, 455–456.) Postmates has not provided any reason for us to depart from this mandate.[5]

## DISPOSITION

The trial court's order denying Postmates' petition to compel arbitration of Plaintiffs Winns, Hickey, and Logan's PAGA civil penalty claim is affirmed. Plaintiffs shall recover their costs on appeal.

---

[5] In light of our conclusion that the trial court properly denied Postmates' motion to compel arbitration of Plaintiffs' PAGA claim under *Iskanian*, we need not address Postmates' challenge to the court's alternative ground for denying its motion based on the court's reading of the representative action waiver.

15

_____

Petrou, J.

WE CONCUR:


_____

Fujisaki, Acting P.J.


_____

Jackson, J.


A155717/*Winns et al. v. Postmates Inc.*

Trial Court:      San Francisco County Superior Court

Trial Judge:      Hon. Andrew Cheng

Counsel:          Mostafavi Law, Amir Mostafavi for Plaintiffs and
                  Respondents.

                  Gibson, Dunn & Crutcher, Theane Evangelis, Michele L.
                  Maryott, Bradley J. Hamburger, and Dhananjay S.
                  Manthripragada for Defendant and Appellant.