[No. B233557. Second Dist., Div. Four. Sept. 10, 2012.]

MAO'S KITCHEN, INC., Cross-complainant and Appellant, v.
THOMAS MUNDY, Cross-defendant and Respondent;
MORSE MEHRBAN, Cross-defendant and Appellant.

COUNSEL

Dragan, Kaiho & Patel, Law Offices of Anton Dragan and Anton Dragan for Cross-complainant and Appellant.

Law Offices of Julie Mehrban and Julie Mehrban for Cross-defendant and Appellant.

No appearance for Cross-defendant and Respondent.

OPINION

MANELLA, J.—

## INTRODUCTION

Mao's Kitchen, Inc. (MKI), appeals from an order granting summary judgment in favor of Thomas Mundy and Morse Mehrban. MKI contends the superior court erred in determining that it lacked subject matter jurisdiction over MKI's qui tam cross-complaint because the cross-complaint was based

upon publicly disclosed information.[1] MKI also appeals from a judgment following the grant of summary judgment, awarding costs to Mehrban. Mehrban cross-appeals from the judgment and prior orders.[2] As a party who fully prevailed, however, Mehrban cannot file a cross-appeal. (See *Danielson v. Stokes* (1963) 214 Cal.App.2d 234, 237 [29 Cal.Rptr. 489] ["Ordinarily if the judgment or order is in favor of a party he is not aggrieved and cannot appeal."]; *Glendale v. Crescenta Mut. Water Co.* (1955) 135 Cal.App.2d 784, 798 [288 P.2d 105] ["Ordinarily a respondent cannot assert error."].) Nevertheless, we have considered Mehrban's arguments as they relate to the summary judgment. We conclude that the superior court had subject matter jurisdiction over the qui tam cross-complaint, but that the conspiracy cause of action should be dismissed. Accordingly, we reverse the grant of summary judgment and remand the matter for further proceedings.

## FACTUAL AND PROCEDURAL HISTORY

### A. *Complaint and Qui Tam Cross-complaint*

On October 14, 2009, Mundy filed a complaint for damages and permanent injunctive relief against MKI, alleging that MKI's restaurant was not accessible, in violation of the Americans with Disabilities Act of 1990, title 42 United States Code section 12182(b)(2)(A)(iv) (ADA) and the Unruh Civil Rights Act, Civil Code section 51 et seq. Mehrban was Mundy's attorney of record in the case.

On December 21, 2009, MKI filed an answer, generally denying the allegations. On the same date, MKI filed a qui tam cross-complaint, alleging two causes of action. In the first cause of action, MKI alleged that Mundy and Mehrban were liable under Government Code section 12651, subdivision (a)(7),[3] part of California's False Claims Act (CFCA), section 12650 et seq., for knowingly filing false statements in fee waiver applications to avoid paying court fees.

During most of the period alleged in the cross-complaint, the fee waiver application form asked an applicant to respond to several questions. First, the applicant was requested to state whether he or she was able to pay any court fees or costs. Next, the applicant was required to list his or her address and occupation. Finally, the applicant was required to check one of three boxes

---

[1] " 'Qui tam' is part of the longer Latin phrase 'qui tam pro domino rege quam pro se ipso in hac parte sequitur," which means 'who brings the action for the king as well as for himself.' [Citation.]" (*U.S. ex rel. St. John LaCorte v. SmithKline Beecham* (3d Cir. 1998) 149 F.3d 227, 230, fn. 1, italics omitted.)

[2] Mundy did not file an appeal. Neither did he file any appellate brief.

[3] All further statutory citations are to the Government Code, unless otherwise stated.

indicating (1) whether the applicant was receiving certain listed governmental benefits, namely SSI, SSP (State Supplementary Payment), CalWORKs (California Work Opportunity and Responsibility to Kids), food stamps, county relief, General Relief, General Assistance (and after July 1, 2009, Medi-Cal); (2) whether the applicant's total gross monthly income was less than a certain threshold amount, listed on an "Information Sheet on Waiver of Court Fees and Costs" available from the clerk's office; or (3) whether the applicant's "income [was] not enough to pay for the common necessaries of life for me and the people in my family whom I support and also pay court fees and costs." In the latter two cases, the applicant was required to fill out the back of the form, which asked questions about the applicant's monthly income and expenses. In addition, the application advised, "You must immediately tell the court if you become able to pay court fees and costs during this action."

In the qui tam action filed in December 2009, MKI alleged (1) that beginning in 2008 and continuing "through the present," Mehrban filed in excess of 200 lawsuits on behalf of Mundy, (2) that in most of those cases, Mundy, at the direction of and with the knowledge and assistance of Mehrban, filed an application for waiver of required filing fees, (3) that in all or most of those cases, a waiver of filing fees was granted, and (4) that Mundy was financially able to pay the filing fees.

MKI further alleged the following: (1) "Qui Tam Defendant Mundy has testified under oath that the only form of assistance received by him is and was Social Security Disability Insurance (SSDI), which is not one of the forms of assistance listed on the fee waiver application"; (2) "Qui Tam Defendant Mundy has testified that he received monetary settlements from between sixty and seventy of the lawsuits filed on his behalf by Attorney Mehrban as [of] November 2008, and that in 2008 his receipt of funds from settlements in lawsuits was at least $65,000"; (3) "Qui Tam Defendant Mundy has testified under oath that he has not reported settlements of his lawsuits to the Los Angeles Superior Court as of December 2008"; (4) "Qui Tam Plaintiff is informed and believes and thereon alleges that Qui Tam Defendant Mundy has testified that he commonly frequents restaurants between two to four times per day spending as much as $70 in a single day"; and (5) "Qui Tam Defendant Mundy has testified under oath that at no time in 2008 was he financially unable to pay for the common necessaries of life." MKI further alleged that Mehrban filed in excess of 200 additional lawsuits on behalf of other clients, and violated the CFCA by improperly seeking fee waivers in those lawsuits as well.

MKI also alleged a second cause of action, that Mundy and Mehrban were liable under section 12651, subdivision (a)(3) for conspiring to violate the CFCA.[4]

### B. *Demurrer and Special Motion to Strike*

On June 18, 2010, Mundy and Mehrban filed a demurrer to the qui tam cross-complaint. In the demurrer, they contended, inter alia, that the superior court lacked subject matter jurisdiction over the causes of action in the cross-complaint because those causes of action were based upon publicly disclosed information, specifically "third parties' disclosure of transactions in prior civil actions, i.e., testimony in those actions." (Italics omitted.) They further contended that MKI did not qualify for the "original source" exception to the public disclosure jurisdictional bar. In addition, Mehrban contended he was not liable under the CFCA, as there was no evidence that he had a legal duty or obligation to pay court filing fees.

MKI opposed the demurrer on the ground that the gravamen of the cross-complaint was based on information that was not publicly disclosed. In the alternative, MKI argued it was an original source of the publicly disclosed information because it "investigated through numerous cases, compiled many dockets, created a detailed case compilation, identified defense counsel and secured copies of deposition transcripts and documents from private party sources" in order to file the cross-complaint. MKI also alleged that Mehrban was personally liable under the CFCA because he had stated under oath that he had a contractual duty to pay the court filing fees for his clients.

MKI's counsel, Gail S. Cooper-Folb, filed a declaration detailing her investigative work with a "colleague, James Link," into Mundy's fee waiver applications. Cooper-Folb stated that attorneys representing defendants in two other matters, *Mundy v. Hennessey Group-Garden Grove Boulevard, LLC* (Super. Ct. Orange County, 2008, No. 30-2008-00085508) (*Mundy v. Hennessey*) and *Mundy v. Taghizadeh* (Super. Ct. L.A. County, 2009, No. 08C04152) (*Mundy v. Taghizadeh*) provided her and Link with copies of Mundy's deposition transcripts in those matters. In *Mundy v. Taghizadeh*, Mundy admitted that he made about $60,000 from lawsuits in 2008. In *Mundy v. Hennessey*, Mundy made the following admissions over the course of three separate days.

During his deposition on November 7, 2008, Mundy admitted that he filed fee waiver applications in his earlier ADA lawsuits, but stated that he stopped

---

[4] On May 17, 2010, the Attorney General's Office filed a notice declining to intervene in the case, but requested that it be advised if the parties proposed to dismiss, settle, or otherwise terminate the action.

filing for waivers in later ADA lawsuits because Mehrban had told him "they weren't required anymore." The process of filing the applications was explained after further questioning:

"Q. Did you personally fill out the fee waiver applications that were filed on your behalf, or were they filled out for you by Mr. Mehrban?

"A. They were filled out for me.

"Q. Did you personally sign all the fee waiver applications, or were they signed for you?

"A. I signed them. [¶] . . . [¶]

"Q. And do you recall which box was checked when you would receive these [applications]? Was it always 'A' [('I am not able to pay *any* of the court fees and costs.')] or was it always 'B' [('I am able to pay *only* the following court fees and costs (*specify*):')]?

"A. I think it was 'A.'

"Q. Okay. And then Number 2 would have your mailing address; correct?

"A. Yes."

Mundy's counsel objected to any other questions about the fee waiver applications. Mundy also stated that he received approximately 60 financial settlements based upon the ADA lawsuits. He admitted he did not inform the superior court about these financial settlements.

When his deposition resumed on November 10, 2008, Mundy admitted receiving federal disability income (SSDI), but denied receiving SSI or any other government benefits. Finally, on December 4, 2008, Mundy stated that he never felt he was unable to pay for the common necessaries of life at any time in 2008. He stated he would have been able to pay for the common necessaries of life even if he had not received any income from the ADA lawsuits. He acknowledged receiving between $50,000 and $65,000 from 60 to 70 ADA lawsuit settlements in 2008.

Cooper-Folb also attached Mehrban's declaration from another proceeding, in which Mehrban stated that if monetary sanctions were imposed against him, "I may have to . . . withdraw as attorney of record for disabled clients in pending cases, including class actions, throughout California because I may no longer be able to advance the attorney's fees and costs on their behalves." Mundy and Mehrban objected to the admission of the declaration on the ground of relevance.

On September 1, 2010, Judge Conrad Aragon overruled the demurrer to the cross-complaint because "all the required elements of the two causes of action . . . have been properly alleged." He found Mehrban's declaration relevant to whether Mehrban had an independent duty or obligation to pay Mundy's court filing fees because the declaration supported a reasonable inference that "Mehrban had advanced costs in the past and that he 'may' continue to do so." Based on the evidence, Judge Aragon determined that from the undisputed facts, "[t]he inescapable inference, in the absence of the confidential fee waiver applications themselves, is that Mundy falsely stated, under penalty of perjury, that he was qualified for fee waivers because of income and[/]or because he received public assistance."

## C.  *Motion for Judgment on the Pleadings*

Mehrban filed a motion for judgment on the pleadings, arguing that the court lacked subject matter jurisdiction because the qui tam cross-complaint was based upon publicly disclosed information. In support, Mehrban cited four exhibits, which he described as follows: (1) "In its January 10, 2009 national news broadcast, C.N.N. characterized Mundy's annual lawsuit settlement proceeds in the 'low six figures.' "; (2) "In its January 5, 2009 news article, the Los Angeles Times stated that Mundy's lawsuit settlement proceeds amounted to '$300,000 in little more than a year.' "; (3) "In [a] 'Defendant's Trial Brief,' executed and filed on December 12, 2008, in [*Mundy v. Hennessey*], the defendant stated that Mundy received $50,000–$65,000 in lawsuit settlement proceeds during 2008."; and (4) "In [a] 'Notice of Motion and Motion for Attorneys' Fees etc.,' executed on December 23, 2008 and filed on December 26, 2008, in [*Mundy v. Hennessey*], defendant stated that Mundy had received at least $65,000 in lawsuit settlement proceeds during 2008."

Mehrban further contended MKI did not meet the "original source" exception to the public disclosure jurisdictional bar, as MKI did not allege and prove facts (1) that it had " 'direct and independent knowledge of the information on which the allegations are based,' " (2) that it had " 'voluntarily provided the information to the Government before filing his or her qui tam action,' " and (3) that it " 'had a hand in the public disclosure of allegations that are a part of his or her suit.' "

In its opposition, MKI disputed that the news media reports, the trial brief, or the attorney fees motion publicly disclosed that Mundy or Mehrban was filing fraudulent applications for fee waivers. MKI noted that the reports and court documents did not mention fee waiver applications, "let alone accuse Mundy of submitting false fee waiver applications. None of the publications mention[ed] the basis for any of the fee waivers. None of the publications

provide[d] Mundy's medical or other expenses for the necessaries of life of a disabled man." MKI contended in the alternative that it was an original source of the publicly disclosed information. In support, MKI attached two pieces of correspondence between "associated counsel . . . for [MKI]" and the office of the presiding judge of the Los Angeles Superior Court about Mundy and Mehrban. The first piece of correspondence was a December 4, 2009 letter from Attorney Link to the presiding judge, stating:

"I feel constrained as an officer of the court to bring the activity of Thomas Mundy and attorney Morse Mehrban to your attention. In the interest of full disclosure, I am defending a case in which Mr. Mundy is the plaintiff.

"The reason for this letter stems from a litigation compilation that I am preparing involving serial litigant Thomas Mundy. In gathering dockets from the many cases and information from other parties, I discovered that Mr. Mundy and his attorney Mr. Mehrban have filed at least 200 cases within the last year and have received fee waivers in 103 cases. I attach my compilation of cases. Considering the number of cases that Mr. Mundy and Mr. Mehrban have settled, Mr. Mundy is not indigent in my opinion. Please note that my inspection of dockets also shows that Mr. Mehrban has filed fee waivers for his other serial plaintiff clients, including, Jon Carpenter, Alfredo Garcia, Francisco Duarte, Luis Marquiz. I have not compiled any listing of those plaintiffs but have noted the fee waiver filings.

"At a time when funding for the courts is diminishing, parties and their counsel should be required to pay filing fees particularly where such parties are using the court system to earn a living."

The second piece of correspondence was a letter from Assistant Presiding Judge Lee Smalley Edmon to Link, responding to Link's December 4 letter. In her letter, Judge Edmon stated, "The Presiding Judge's Office does not have the authority to investigate your claims regarding Thomas Mundy's applications for fee waivers. Additionally, the Presiding Judge's Office lacks jurisdiction to investigate or discipline attorneys. Your complaints regarding Morse Mehrban, Esq., should be directed to the California State Bar. [Contact information for State Bar.] [¶] Unfortunately, this office can be of no further assistance on this matter, and will take no further action on your complaint."

On March 21, 2011, Judge Deirdre Hill denied the motion for judgment on the pleadings. She stated: "By the instant motion[,] the moving party has not demonstrated from these sources that publicly available information was sufficient to place the government on notice of the alleged fraudulent nature of the fee applications when the complaint was filed." Judge Hill noted that: "The existence and granting of fee waiver applications in a large number of lawsuits

would have also been apparent from review of each public court docket; the specifics of the representations therein would have been available only to the court. These two distinct facts if correlated may have given rise to a basis for inquiry. However, these occurrences are not enough alone to evidence a basis for, or an occurrence of a stated accusation of Mundy's perpetration of a fraud directed against the government. . . . The contention and supporting information that Mundy was necessarily unqualified yet had fraudulently requested and received fee waivers to the detriment of the public coffers has not been shown to have been previously publicly discussed or for any reason within the base of available knowledge available to the government."

### D. *Motions for Summary Judgment*

Mundy and Mehrban filed separate motions for summary judgment. They contended, among other grounds, (1) that the court lacked subject matter jurisdiction because of the public disclosure jurisdictional bar, (2) that 10 of the disputed fee waiver applications were not fraudulent, as the applications were based upon Mundy's Medi-Cal eligibility and Mundy was approved for Medi-Cal benefits prior to filing those fee waiver applications, (3) that lawsuit settlement proceeds were not "income" for purposes of the fee waiver applications, and (4) that their decision to not include lawsuit settlement proceeds in the fee waiver applications was an innocent mistake or mere negligence Mehrban separately argued he had no legal obligation to pay Mundy's court fees "under any statute, regulation, contract, judgment, or acknowledgement of indebtedness." Mehrban also asserted in a declaration that the deposition transcripts in *Mundy v. Hennessey* were lodged with the court by defense counsel during trial in that case in December 2008, and the transcript in *Mundy v. Taghizadeh* was lodged with the court during trial in that case on December 8, 2009. Finally, Mehrban included in support of his motion for summary judgment, a declaration by Mundy that "Morse Mehrban never conspired or agreed with me to misrepresent my income on financial statements I filed with the Court under Government Code section 68633, subdivision (c)(2)."

MKI filed oppositions to both motions. MKI contended "the public disclosure jurisdictional bar [did] not apply because the false claims of Mundy and Mehrban were not publicly disclosed prior to the filing of this qui tam action—not the subject of fee waivers, not the applications, not any accusations of falsity, not any accusation of conspiracy between them." MKI argued that Attorney Link's letter was not a publicly disclosed document. In the alternative, to the extent that the court found the letter to be a public disclosure, MKI argued that it was the original source of the public disclosure, as it "reported the accusation and the facts then known to associated counsel to the Superior Court."

MKI also argued that Mundy fraudulently applied for Medi-Cal benefits, and requested permission, if the trial court deemed it necessary, to amend its cross-complaint to include these new allegations. MKI explained that beginning July 1, 2009, Medi-Cal eligibility was added as an automatic qualifier for fee waivers. On July 16, 2009, a court commissioner had denied 10 fee waiver applications filed by Mundy, which were based upon assertion that he did not have enough income to pay for the common necessaries of life, and also for court fees and costs. Two months later, Mundy applied for Medi-Cal benefits. MKI contended that discovery in the instant matter disclosed facts from which it could be inferred that Mundy had fraudulently applied for Medi-Cal benefits.

MKI further contended that regardless of cross-defendants' assertion that lawsuit settlement proceeds were not "income," they had conceded that settlement proceeds should be considered income for purposes of court fee waivers, by listing "Settlement $1,000" under the heading "Other money I get each month" in 10 fee waiver applications. The applications included those amounts of money as part of the applicant's "total monthly income." MKI also argued that Mundy knew or should have known that false statements were submitted in the fee waiver applications because he signed the applications knowing or deliberately ignoring what was filled out on the applications.

In addition, MKI argued that Mehrban knowingly filed false claims with the court because he had actual knowledge of the falsity of the income statements in the fee waiver applications, or acted in deliberate ignorance or with reckless disregard by submitting the fee waiver applications containing the false statements about the amount of monthly settlement proceeds. MKI further argued that Mehrban was liable under the CFCA because "Mehrban has admitted under oath that he, not his clients, pays costs of suit." MKI did not dispute Mehrban's assertion that the deposition transcripts in *Mundy v. Hennessey* and *Mundy v. Taghizadeh* had been lodged with the respective trial courts.

Mehrban filed a reply, contending that the public disclosure jurisdictional bar applied because the qui tam cross-complaint was based upon information that was accessible to the public and the government at the time the cross-complaint was filed. Specifically, the publicly disclosed facts were (1) Mundy's settlement proceeds, (2) his having applied for and having received fee waiver orders, and (3) Link's letter to the superior court. Mehrban also argued that MKI was not the original source of the publicly disclosed information, as Link was not formally associated with MKI until after the cross-complaint was filed.

On April 6, 2011, Judge Hill held a hearing on the motions for summary judgment, at which she announced her tentative decision in favor of Mundy

and Mehrban, on the ground that the qui tam action was based upon publicly disclosed information in media reports, court dockets, the Link letter, and the lodged deposition transcripts. Judge Hill also tentatively concluded that MKI was not an original source of the public disclosures. Cooper-Folb referenced the trial court's decision in denying the motion for judgment on the pleadings. In addition, she argued MKI was the original source of the Link letter, as Link had been working with her from the inception. "He's been my agent." Cooper-Folb also stated that Link had sent the letter to the presiding judge "at my direction."

On April 6, 2011, Judge Hill issued a written order granting summary judgment in favor of Mundy and Mehrban. She concluded that they had demonstrated that the government, and specifically the Los Angeles Superior Court, was apprised of the nature of the claims in the cross-complaint from (1) a CNN televised report that asserted " 'Mundy's annual income [was] in [the] low 6 figures,' " purportedly posted to a Web site on January 10, 2009, (2) a Los Angeles Times article dated January 5, 2009, which estimated Mundy's earnings/proceeds from lawsuits at $300,000 per year, (3) deposition transcripts lodged in other court proceedings in December 2008 and 2009, in which Mundy admitted that he did not qualify for fee waivers, (4) Link's letter to the presiding judge specifically expressing the opinion that Mundy did not qualify for fee waivers, and (5) the contents of the sealed fee waiver applications which were available to the court for review. Judge Hill also found that, "No mention is made in Link's letter . . . or in Link's declaration or other evidence submitted herein that Link was Mao's attorney at that time or was acting on Mao's behalf in writing the letter. No such inference can be drawn from the presentation made and no such contention had been made during the extensive arguments made to the court." The court did not address appellant's request to amend the cross-complaint to allege Mundy's fraud in applying for Medi-Cal benefits.

E. *Notices of Appeal*

On June 6, 2011, MKI filed a notice of appeal from the order granting summary judgment. MKI filed another notice of appeal from a June 28, 2011 judgment awarding costs to Mehrban. On July 14, 2011, Mehrban filed a cross-appeal, attaching a pleading listing the order overruling the demurrer, the order denying cross-defendants' evidentiary objections to MKI's evidence, and the order denying judgment on the pleadings.

## DISCUSSION

A party is entitled to summary judgment "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party

is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) "[T]he party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 [107 Cal.Rptr.2d 841, 24 P.3d 493].) In ruling on the motion, the court must view the evidence in the light most favorable to the opposing party. "An order granting summary judgment, of course, is reviewed independently." (*Id.* at p. 860.) Here, the superior court determined there was no triable issue of material fact on the public disclosure jurisdictional bar to appellant's qui tam cross-complaint under the CFCA. We reverse the grant of summary judgment, as we find there was no public disclosure of the information critical to appellant's claims. We conclude, however, that Mundy and Mehrban were entitled to summary adjudication on the conspiracy cause of action.

## A. Public Disclosure Jurisdictional Bar

■ "The CFCA permits the recovery of civil penalties and treble damages from any person who knowingly presents a false claim for payment to the state or a political subdivision. (Gov. Code, § 12651, subd. (a)(1).) The CFCA was enacted in 1987 and was modeled on the federal False Claims Act (31 U.S.C. § 3729 et seq.) . . . ." (*State of California ex rel. Standard Elevator Co., Inc. v. West Bay Builders, Inc.* (2011) 197 Cal.App.4th 963, 973 [130 Cal.Rptr.3d 99].) Accordingly, "it is appropriate to turn to federal cases for guidance in interpreting the [CFCA]." (*City of Pomona v. Superior Court* (2001) 89 Cal.App.4th 793, 802 [107 Cal.Rptr.2d 710].)

■ "The [CFCA], like its federal counterpart (31 U.S.C. § 3729 et seq.), erects a jurisdictional bar to qui tam actions that do not assist the government in ferreting out fraud because the fraudulent allegations or transactions are already in the public domain." (*State of California v. Pacific Bell Telephone Co.* (2006) 142 Cal.App.4th 741, 748 [48 Cal.Rptr.3d 427] (*Grayson*).) The reason is that "[w]here there has been a public disclosure[,] the governmental authority is 'already in a position to vindicate society's interests, and a qui tam action would serve no purpose.' " (*Ibid.*, italics omitted.) Thus, section 12652, subdivision (d)(3)(A) provides that "[n]o court shall have jurisdiction over an action under this article based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in an investigation, report, hearing, or audit conducted by or at the request of the Senate, Assembly, auditor, or governing body of a political subdivision, or by the news media, unless the action is brought by the Attorney General or the prosecuting authority of a political subdivision, or the person bringing the action is an original source of the information."

■ "The jurisdictional bar is 'triggered whenever a plaintiff files a qui tam complaint containing allegations or describing transactions "substantially similar" to those already in the public domain so that the publicly available information is already sufficient to place the government on notice of the alleged fraud.' [Citation.]" (*Grayson, supra,* 142 Cal.App.4th at p. 748; but see *City of Hawthorne ex rel. Wohlner v. H&C Disposal Co.* (2003) 109 Cal.App.4th 1668 [1 Cal.Rptr.3d 312] (*Wohlner*) [jurisdictional bar applies only if qui tam action alleged the same conduct that was described in public disclosures].) "A qui tam plaintiff bears the burden of establishing that the exercise of the court's jurisdiction is proper." (*Grayson, supra,* 142 Cal.App.4th at p. 748.)

■ We independently review whether MKI met its burden of establishing the public disclosure jurisdictional bar did not apply to its cross-complaint. In our review, we are guided by the appellate court's discussion of what constituted public disclosure in *U.S. ex rel. Springfield Terminal Railway v. Quinn* (D.C. Cir. 1994) 304 U.S. App.D.C. 347 [14 F.3d 645 ] (*Springfield Terminal*): "On the basis of plain meaning, and at the risk of belabored illustration, if X + Y = Z, Z represents the *allegation* of fraud and X and Y represent its essential elements. In order to disclose the fraudulent *transaction* publicly, the combination of X and Y must be revealed, from which readers or listeners may infer Z, *i.e.,* the conclusion that fraud has been committed. . . . [¶] . . . In terms of the mathematical illustration, when X by itself is in the public domain, and its presence is essential but not sufficient to suggest fraud, the public fisc only suffers when the whistle-blower's suit is banned. When X *and* Y surface publicly, or when Z is broadcast, however, there is little need for *qui tam* actions, which would tend to be suits that the government presumably has chosen not to pursue or which might decrease the government's recovery in suits it has chosen to pursue." (*Springfield Terminal,* at p. 654.)

■ We are also guided by the purpose of the public disclosure jurisdictional bar, which was "designed to bar parasitic or opportunistic qui tam actions by persons simply taking advantage of public information without contributing to or assisting in the exposure of the fraud. [Citation.]" (*Wohlner, supra,* 109 Cal.App.4th at p. 1683.) "Therefore, the public disclosure bar should be applied only as necessary to preclude parasitic or opportunistic actions, but not so broadly as to undermine the Legislature's intent that relators assist in the prevention, identification, investigation, and prosecution of false claims." (*Ibid.*)

Here, appellant's qui tam cross-complaint alleged that Mundy and Mehrban violated the CFCA by misrepresenting Mundy's financial condition in confidential fee waiver applications in order to avoid paying court fees.

(See § 12651, subd. (a)(7) [any person who "[k]nowingly makes, uses, or causes to be made or used a false record or statement material to an obligation to pay or transmit money or property to the state or to any political subdivision, or knowingly conceals or knowingly and improperly avoids, or decreases an obligation to pay or transmit money or property to the state or to any political subdivision" violates the CFCA].) Thus, the essential elements of the cross-complaint are (1) that Mundy and Mehrban filed for and received fee waivers and (2) that they knowingly made false statements in those fee waiver applications to avoid paying required court fees.

The appellate record shows the first essential element—filing for and receiving fee waivers—was publicly disclosed, as the court dockets showing Mundy's lawsuits and the fee waivers were available for review by any member of the public prior to the filing of the cross-complaint. (See *U.S. ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Prudential Ins. Co.* (3d Cir. 1991) 944 F.2d 1149, 1155–1156 [Jurisdictional bar was "designed to preclude *qui tam* suits based on information that would have been equally available to strangers to the fraud transaction had they chosen to look for it as it was to the relator. Information gleaned in litigation and on file in the clerk's office falls in this category."].)

As to the second essential element—making false statements to secure fee waivers—the superior court determined this was publicly disclosed, based upon (1) news media reports from CNN and the Los Angeles Times, estimating Mundy's income; (2) Mundy's executed and filed fee waiver applications, in which Mundy stated that he could not pay for the "common necessaries of life"; (3) Attorney Link's letter to the presiding judge, alleging that Mundy had likely been granted fee waivers when he was not indigent; and (4) deposition transcripts lodged in connection with other proceedings in 2008 and 2009, establishing that Mundy was financially able to pay court fees. We conclude that some of the listed documents were publicly disclosed, but that those documents did not support the superior court's ruling that it lacked subject matter jurisdiction over the qui tam action.

As an initial matter, we note that the fact that Mundy applied for and received fee waivers was publicly disclosed. In addition, the potential grounds for the superior court to grant a fee waiver were also in the public domain, as a blank fee waiver application form was publicly available. In order for the second essential element to be publicly disclosed, however, the public must have been able to infer that Mundy and Mehrban made one or more false statements on the fee waiver applications to avoid paying court fees.

The news media reports show that Mundy's income was above the threshold amount, which is the second ground for a court to grant a fee

waiver. The reports, however, do not address any of the other grounds for fee waivers. Moreover, the news media reports do not even mention fee waivers, let alone suggest that Mundy and Mehrban knowingly filed false statements to receive those fee waivers. Thus, the disclosures about Mundy's income in the news media reports were not sufficient to bar the qui tam action.

■ In light of the media reports, the actual fee waiver applications, however, do suggest that Mundy and Mehrban made a false statement about Mundy's income. In 10 of Mundy's fee waiver applications, disclosed to MKI by court order, Mundy or Mehrban listed $1,000 in settlement proceeds under Mundy's monthly income. If publicly disclosed, the income statement would allow the public to infer fraud. It is undisputed, however, that those statements are confidential and are not disclosed to the public without court order. The fact that a trial judge could review the executed fee waiver applications is immaterial, because there was no disclosure to a member of the public outside the court system. "[A] 'public disclosure' requires that there be some act of disclosure to the public outside of the government. The mere fact that the disclosures are contained in government files someplace, or even that the government is conducting an investigation behind the scenes, does not itself constitute public disclosure." (*U.S. ex rel. Rost v. Pfizer, Inc.* (1st Cir. 2007) 507 F.3d 720, 728 (*Rost*); accord, *Kennard v. Comstock Resources, Inc.* (10th Cir. 2004) 363 F.3d 1039, 1043 [the public disclosure requirement "clearly contemplates that the information be in the public domain in some capacity and the Government is not the equivalent of the public domain"]; *U.S. ex rel. Schumer v. Hughes Aircraft Co.* (9th Cir. 1995) 63 F.3d 1512, 1518 ["[I]nformation that was 'disclosed in private' [between government and defendant company] has not been publicly disclosed."]; *U.S. ex rel. Williams v. NEC Corp.* (11th Cir. 1991) 931 F.2d 1493, 1496, fn. 7 ["Even if a government investigation was pending at the time [the relator] filed his *qui tam* complaint, such fact would not jurisdictionally bar [the FCA claim]."]; but see *U.S. v. Bank of Farmington* (7th Cir. 1999) 166 F.3d 853, 861 (*Matthews*) [knowledge on the part of the government bars qui tam action where disclosure made to appropriate investigatory official].) Thus, for purposes of the public disclosure jurisdictional bar, the contents of Mundy's executed fee waiver applications was not information in the public domain.

Similarly, Attorney Link's letter to the presiding judge was not publicly disclosed, as there is no evidence that the letter was disclosed to any person outside the court system. Moreover, Link's letter was not directed to an appropriate investigatory official because the presiding judge's office made clear that it lacked authority to investigate or take action on the claims raised in Link's letter. (Cf. *Matthews, supra,* 166 F.3d at p. 862 [disclosure to governmental official responsible for oversight of transactions involved in qui tam action constituted public disclosure].)

Finally, we turn to the deposition transcripts in *Mundy v. Hennessey* and *Mundy v. Taghizadeh*, lodged by the respective defense counsel during trial in 2008 and 2009. The deposition transcript in *Mundy v. Taghizadeh*, lodged with the Los Angeles County Superior Court on December 8, 2009, revealed only that Mundy acknowledged receiving about $60,000 from lawsuit settlement proceeds in 2008. That information was duplicative of information already available from news media reports, albeit with greater foundation. It was insufficient to show that Mundy and Mehrban had knowingly made false statements in the fee waiver applications, as it neither revealed the basis on which Mundy had claimed a fee waiver nor demonstrated that none of the possible bases for a fee waiver could apply.

However, the deposition transcripts in *Mundy v. Hennessey*, lodged with the Orange County Superior Court in December 2008, revealed information from which the public could infer that Mundy did not qualify to receive fee waivers. In that deposition and over the course of several days, Mundy admitted that (1) he filed for fee waivers, (2) at the time he did so, he received no governmental benefits except SSDI, (3) he received between $50,000 and $65,000 from lawsuit settlement proceeds in 2008, and (4) he never felt unable to pay for the necessaries of life in 2008. For the reasons explained below, we conclude the information in this deposition was not publicly disclosed.

■    Generally, courts have held that discovery materials *filed* with the court are publicly disclosed. (See *U.S. ex rel. Kreindler & Kreindler v. United Technologies Corp.* (2d Cir. 1993) 985 F.2d 1148, 1158 ["[I]nformation was publicly disclosed because it was available to anyone who wished to consult the court file."]; accord, *Springfield Terminal, supra*, 14 F.3d at p. 652 ["[D]iscovery material, when filed with the court (and not subject to protective order), is 'publicly disclosed' in a 'civil hearing' for purposes of [the public disclosure] jurisdictional bar."].) The deposition transcripts relied on here were not filed, but were temporarily lodged with the court. Counsel has not cited—and we have not found—any case discussing the treatment of lodged, as opposed to filed, documents for purposes of determining whether information has been publicly disclosed. However, we find a meaningful difference. Filing a document makes it a part of the permanent court file, whereas lodging a document makes it only temporarily a court record. (See, e.g., *Beltone Electronics Corp. v. Superior Court* (1978) 87 Cal.App.3d 452, 455 [151 Cal.Rptr. 109] [lodging of discovery materials under Code Civ. Proc., former § 2010, subd. (b) is "the temporary deposit of the documents in conjunction with a motion to file, until the court determines them to be relevant. In the event they are relevant, they would be filed, and if not, they would be returned to the party"].) For example, the Superior Court of Orange County, Local Rules, rule 601.03 provides that: "Parties may deposit voluminous documents that need not be part of the permanent court file but that are

to be considered for their evidentiary value. . . . The documentation will be returned to the parties after the hearing. Documents for which arrangements are not made may be destroyed 30 days after the hearing." As the rule recognizes, lodged records tend to be voluminous. Often, in order to avoid forfeiture, parties lodge documents without regard to the potential value of information located in those records. Some courts require lodging of deposition transcripts prior to trial, even if the parties intend to only use limited excerpts from those transcripts. (See, e.g., Super. Ct. L.A. County, Local Rules, rule 3.56 ["Unless the signing of a deposition is waived, or certification by the deposition officer is obtained pursuant to Code of Civil Procedure section 2025.540, all depositions must be signed and lodged with the clerk of the trial court before the commencement of trial."].)

▮ The temporary, often voluminous nature of lodged documents persuades us that lodged documents should not be treated in the same manner as filed documents for purposes of the public disclosure jurisdictional bar. In reaching this conclusion, we are guided by the principle that "the public disclosure bar should be applied only as necessary to preclude parasitic or opportunistic actions, but not so broadly as to undermine the Legislature's intent that relators assist in the prevention, identification, investigation, and prosecution of false claims." (*Wohlner, supra*, 109 Cal.App.4th at p. 1683.) Due to the temporary and often voluminous nature of lodged materials, it would not be easy for a member of the public to locate the relevant information in such materials. Rather, a potential relator would have to learn of the lodging and identify the relevant information within the lodged documents—all during the limited period in which the court had temporary custody of them. In short, a rule requiring that information contained in often voluminous materials only temporarily accessible to the public be considered publicly disclosed seems neither necessary to prevent "parasitic or opportunistic actions," nor compatible with the legislative purpose of encouraging relators to assist in the investigation and prosecution of false claims.

The facts of the instant case illustrate the principle we have just articulated. According to Mehrban's declaration, the *Mundy v. Hennessey* deposition transcripts were lodged during trial, and the record indicates that trial was scheduled for December 15, 2008. On December 26, 2008, the defendant in *Mundy v. Hennessey*, "as the prevailing party in the instant action," filed a motion for attorney fees and/or sanctions against Mundy and Mehrban "for pursuing the instant lawsuit without evidentiary support, for improper purposes, and for the purposes of increasing the costs of litigation." Thus, it can be inferred that the deposition transcripts were lodged for less than two weeks in December 2008, and were either returned or destroyed within the next 30 days thereafter. Nothing suggests that in October 2009, when Mundy

filed his ADA lawsuit against MKI—and MKI had reason to begin investigating the fee waiver applications—the deposition transcripts were lodged with the Orange County Superior Court or were in any way publicly accessible.[5]

■ In addition, we note that neither MKI nor any member of the public could easily have located the pertinent information in those deposition transcripts. During the deposition, defense counsel never alleged that Mundy or Mehrban made false statements on the fee waiver applications. There was no testimony about what was stated on the applications as a basis for the court to grant a fee waiver, and a completed fee waiver application was not produced during the deposition. Finally, the relevant pieces of information that MKI relied upon in filing its qui tam action were located in separate volumes of the deposition transcripts. In short, although a member of the public could potentially have examined the lodged transcripts for a brief period in December 2008, we conclude that this potential public disclosure is insufficient to establish that the information contained in the depositions was in the public domain. (See *Springfield Terminal, supra,* 14 F.3d at p. 652 [discovery material theoretically available upon public's request not publicly disclosed]; accord, *Matthews, supra,* 166 F.3d at p. 861 ["[B]arring actions based on information which was merely potentially but not actually opened up to view does not discourage parasitism. It only deters diligence in uncovering fraud."].)[6]

## B. *Alternative Grounds for Sustaining Summary Judgment*

Mehrban contends the order granting summary judgment can be sustained on other grounds. Specifically, he contends the conspiracy cause of action against him must be dismissed because prior to October 11, 2009, the CFCA did not provide that conspirators were liable for "reverse false claims," such as the claims at issue here. In addition, he contends there was no evidence in the record to support the causes of action against him. In connection with this latter argument, Mehrban contends the trial court abused its discretion in overruling his evidentiary objections to his declaration in another matter and to Mundy's discovery responses in this matter. We address each issue in turn.

### 1. *Conspiracy Under the CFCA*

■ Section 12651 imposes liability on any person who knowingly *presents* a false or fraudulent claim for payment to the government—a

---

[5] Indeed, the record shows that MKI did not obtain copies of the deposition transcripts from the superior court, but from defense counsel representing other parties whom Mundy and Mehrban had sued.

[6] Because we conclude that Attorney Link's letter and the *Mundy v. Hennessey* deposition transcripts were not publicly disclosed, we need not address whether the qui tam action was " 'based upon' " the information in those documents or whether MKI fell within the " 'original source' " exception to the public disclosure jurisdictional bar. (*Rost, supra,* 507 F.3d at p. 728.)

"traditional" false claim—or who knowingly makes or uses a false statement to *avoid* paying the government—a "reverse" false claim. (See § 12651, subd. (a)(1) & (7).) With respect to a claim of conspiracy, however, former section 12651, subdivision (a)(3) imposed liability only for "conspir[ing] to defraud the state or any political subdivision by getting a false claim allowed or paid by the state or by any political subdivision." Thus, by its plain language, the former version of subdivision (a)(3) applied only to those who conspired to make traditional false claims, but imposed no liability for conspiring to make a reverse false claim. (See *U.S. ex rel. Atkinson v. Pennsylvania Shipbuilding Co.* (E.D.Pa. 2002) 255 F.Supp.2d 351, 414 [interpreting identical language in federal False Claims Act as excluding from liability "a person who conspires to defraud the United States by concealing his or her own financial obligation to the government"]; accord, *U.S. ex rel. Huangyan Import & Export Corp. v. Nature's Farm Products, Inc.* (N.D.Cal. 2005) 370 F.Supp.2d 993, 1003 [noting the "unusual lack of symmetry," in that "[n]ormal and reverse false claims are equally punishable as a substantive matter, but only conspiracies directed at the former, not the latter, are punishable"].) This loophole in the CFCA was closed when, on October 11, 2009, subdivision (a)(3) was amended to impose liability on a person who "[c]onspires to commit a violation of this subdivision." (§ 12651, subd. (a)(3), eff. Jan. 1, 2010.) Because filing a reverse false claim is a violation of section 12651, subdivision (a)(7), a conspiracy to file a reverse false claim now violates subdivision (a)(3). However, because the amendment to subdivision (a)(3) was not effective until January 1, 2010, neither Mundy nor Mehrban could be liable on MKI's conspiracy cause of action for any false fee waiver applications filed prior to that date. (Cf. *U.S. ex rel. Sanders v. Allison Engine Co.* (S.D. Ohio 2009) 667 F.Supp.2d 747, 752–758 [ex post facto clause prohibited retroactive application of amendment to federal False Claims Act].)[7]

---

[7] Because the qui tam cross-complaint was filed December 21, 2009, MKI did not state a viable cause of action for conspiracy to violate the CFCA. To the extent that Mundy and Mehrban filed reverse false claims after January 1, 2010, MKI may seek leave to amend its complaint to add a conspiracy cause of action against them. We reject Mehrban's alternative argument that there was no viable cause of action for conspiracy because there was no evidence he and Mundy conspired to file fraudulent fee waiver applications. The declarations by Mehrban and Mundy that they did not engage in a conspiracy were insufficient to satisfy Mehrban's initial burden of proof to show there was no triable issue of material fact on the conspiracy cause of action. (See *Krantz v. BT Visual Images* (2001) 89 Cal.App.4th 164, 173 [107 Cal.Rptr.2d 209] ["[M]oving party's 'simply pointing to' the absence of evidence supporting plaintiff's position is not in itself enough to obtain summary judgment in its favor. There must be some 'affirmative showing' by the moving defendant that plaintiff could not obtain such evidence, before summary judgment would be proper."].)

## 2. *Triable Issue of Material Fact on Mehrban's Liability*

Mehrban also contends he was not liable under the CFCA, as he did not have an independent obligation to pay court filing fees. (See *State of California ex rel. Bowen v. Bank of America Corp.* (2005) 126 Cal.App.4th 225, 240 [23 Cal.Rptr.3d 746] [" '[I]n order to be subject to the penalties of the False Claims Act, a defendant must have had a present duty to pay money or property that was created by a statute, regulation, contract, judgment, or acknowledgement of indebtedness.' "].) We disagree that Mehrban was entitled to summary judgment on this basis.

Initially, we reject Mehrban's relevance objection to his prior declaration, in another matter, that if monetary sanctions were imposed against him, "I may have to . . . withdraw as attorney of record for disabled clients in pending cases, including class actions, throughout California because I may no longer be able to advance the attorney's fees and costs on their behalves." The declaration was relevant to whether Mehrban had a contractual obligation to pay the court filing fees of his clients, including Mundy. As the trial court stated, the declaration suggested that Mehrban had paid court filing fees for his clients in the past, and might continue to do so. Thus, there was a triable issue of material fact as to whether Mehrban had a contractual obligation to pay the court filing fees for his clients. Accordingly, Mehrban was not entitled to summary judgment on the ground that as a matter of law he did not have an independent duty to pay court filing fees.[8]

Finally, Mehrban contends he was entitled to summary judgment, as there was no evidence that Mundy's representation of his "income" on the fee waiver applications was false. We disagree. On at least 10 fee waiver applications, Mundy, Mehrban, or their agents filled out "Settlement $1,000" under the subheading "Other money I get each month," which was part of the applicant's "total monthly income." Thus, it can be inferred that Mundy or Mehrban or both knew that lawsuit settlement proceeds were considered income for purposes of a fee waiver. The record also supports an inference that Mundy and Mehrban knew Mundy's settlement proceeds greatly exceeded $1,000 per month when they filed the fee waiver applications, as Mehrban was Mundy's attorney during that time. Thus, there was a triable issue of material fact as to whether Mundy or Mehrban knowingly filed or used a false statement about the amount of Mundy's settlement proceeds to avoid paying court filing fees.

---

[8] We also reject Mehrban's hearsay objections to Mundy's responses to interrogatories, in which Mundy stated that he presigned fee waiver applications which Mehrban would file, and attaching a spreadsheet showing in which cases fee waiver applications were filed. The responses are admissible as prior inconsistent statements, as they are inconsistent with Mundy's declaration in support of Mehrban's motion for summary judgment that there was no conspiracy between Mehrban and Mundy to avoid paying court fees. (Evid. Code, § 1235.)

## DISPOSITION

The order granting summary judgment is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. The judgment awarding costs is reversed. Each party shall bear its own costs on appeal.

Epstein, P. J., and Suzukawa, J., concurred.

A petition for a rehearing was denied October 9, 2012.